## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

ROLAND K. HUFF,          )
                       )
        Plaintiff,     )
                       )
v.                      )
                       )  Case No. 22-CV-044 GKF-JFJ
BP CORPORATION NORTH AMERICA,  )
INC.,                   )
                       )
        Defendant.   )

---

## DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT

---

Alison M. Howard, OBA #19835
CROWE & DUNLEVY,
A Professional Corporation
Braniff Building
324 N. Robinson Ave.
Suite 100
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
alison.howard@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT BP
CORPORATION NORTH AMERICA
INC.**

January 31, 2022

## **TABLE OF CONTENTS**

BACKGROUND ................................................................................................ 2

ARGUMENT AND AUTHORITY .................................................................. 5

I.    PLAINTIFF'S LAWSUIT IS PRECLUDED BY *HUFF I* ....................... 5

II.   PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY ERISA .............. 10

III.  PLAINTIFF DOES NOT STATE A CLAIM FOR RELIEF UNDER ERISA ........ 17

      A.  Plaintiff Does Not State A Plausible ERISA Claim ............................ 17

      B.  Plaintiff's Only Speculative ERISA Claim Fails On Face of Complaint.......... 20

CONCLUSION ............................................................................................. 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adamson v. Unum Life Ins. Co. of Am.*,
    455 F.3d 1209 (10th Cir. 2006) ................................................... 14

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004)........................................................... 11, 15

*Allison v. Unum Life Ins. Co. of Am.*,
    381 F.3d 1015 (10th Cir. 2004) ................................................ 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................. 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................. 18

*Blackwell v. UNUM Life Ins. Co. of Am.*,
    No. 04-CV-60-GKF-PJC, 2008 WL 2199711 (N.D. Okla. May 23,
    2008) ...................................................................................... 16

*Brereton v. Bountiful City Corp.*,
434 F.3d 1213 (10th Cir. 2006) ...................................................................... 6

*Brownback v. King*,
141 S.Ct. 740 (2021) ...................................................................................... 6

*Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A., Inc.*,
519 U.S. 316 (1997) ...................................................................................... 14

*Cameron v. The Forest Hills IPA, Inc.*,
No. 09–CV–0311–CVE-PJC, 2009 WL 3334930 (N.D. Okla. Oct. 13,
2009) ............................................................................................................ 8, 9

*Cannon v. Grp. Health Serv. of Okla.*,
77 F.3d 1270 (10th Cir. 1996) .................................................................... 15

*Conkright v. Frommert*,
559 U.S. 506 (2010) ................................................................................ 10, 11

*Divine v. Life Ins. Co. of N. Am.*,
No. 06-CV-0099-CVE-PJC, 2006 WL 2054075 (N.D. Okla. July 24,
2006) ............................................................................................................ 16

*Egelhoff v. Egelhoff*,
532 U.S. 141 (2001) ...................................................................................... 14

*F.D.I.C. v. Grant*,
8 F. Supp. 2d 1275 (N.D. Okla. 1998) ........................................................ 17

*Federated Dept. Stores, Inc. v. Moitie*,
452 U.S. 394 (1981) .................................................................................. 5, 10

*FMC Corp. v. Holliday*,
498 U.S. 52 (1990) ........................................................................................ 13

*Gobeille v. Liberty Mut. Ins. Co.*,
577 U.S. 312 (2016) ...................................................................................... 13

*Hagans v. Lavine*,
415 U.S. 528 (1974) ........................................................................................ 6

*Huff v. Metro. Life Ins. Co.*,
No. 21-CV-0284-CVE, 2021 WL 4952501 (N.D. Okla. Oct. 25, 2021)
................................................................ 1, 2, 3, 4, 6, 7, 9, 11, 16, 18, 19, 20, 21

ii

*In Cameron v. The Forest Hills IPA, Inc.*,
   No. 09–CV–0311–CVE, WL 3334930 (N.D. Okla. Oct. 13, 2009) ........................ 8, 9

*Ingersoll-Rand Co. v. McClendon*,
   498 U.S. 133 (1990) ............................................................................................ 10, 13

*Jacobsen v. Deseret Book Co.*,
   287 F.3d 936 (10th Cir. 2002) ..................................................................................... 3

*Johnson v. Spencer*,
   950 F.3d 680 (10th Cir. 2020) ..................................................................................... 2

*Joint Anti-Fascist Refugee Comm. v. McGrath*,
   341 U.S. 123 (1951) .................................................................................................. 17

*Kelso v. Gen. Am. Life Ins. Co.*,
   967 F.2d 388 (10th Cir. 1992) ................................................................................... 14

*Kerber v. Qwest Grp. Life Ins. Plan*,
   647 F.3d 950 (10th Cir. 2011) ................................................................................... 15

*Kidneigh v. UNUM Life Ins. Co. of Am.*,
   345 F.3d 1182 (10th Cir. 2003) ................................................................................. 15

*Koble v. United Health Care, Inc.*,
   No. 14–CV–0391–CVE–PJC, 2014 WL 4748609 (N.D. Okla. Sept. 23,
   2014) ..................................................................................................................... 15, 16

*Loden v. Blue Cross and Blue Shield of Okla.*,
   No. 11–CV–0673–CVE–TLW, 2013 WL 5207238 (N.D. Okla. Sept.
   13, 2013) ...................................................................................................................... 3

*MACTEC, Inc. v. Gorelick*,
   427 F.3d 821 (10th Cir. 2005) ................................................................................. 5, 9

*McCarty v. First of Georgia Ins.Co.*,
   713 F.2d 609 (10th Cir. 1983) ..................................................................................... 8

*McKinnon v. Doyle & Linda, Inc.*,
   No. 09-CV-0178-CVE-TLW, 2009 WL 1619951 (N.D. Okla. June 9,
   2009) .......................................................................................................................... 15

*Metro. Life Ins. Co. v. Taylor*,
   481 U.S. 58 (1987) .................................................................................................... 14

*Moffett v. Halliburton Energy Servs., Inc.*,
   291 F.3d 1227 (10th Cir. 2002) ................................................................ 15

*Monument Bldrs. of Greater Kans. City, Inc. v. Am. Cemetery Ass'n of
   Kans.*,
   891 F.2d 1473 (10th Cir. 1989) ................................................................ 17

*Mountain View Pharmacy v. Abbott Labs.*,
   630 F.2d 1383 (10th Cir. 1980) ................................................................ 17

*Peckham v. Gem State Mut. of Utah*,
   964 F.2d 1043 (10th Cir. 1992) ......................................................... 11, 12

*Pelt v. Utah*,
   539 F.3d 1271 (10th Cir. 2008) .................................................................. 5

*Pilot Life Ins. Co. v. Dedeaux*,
   481 U.S. 41 (1987) ........................................................................ 10, 11, 14

*Plotner v. AT & T Corp.*,
   224 F.3d 1161 (10th Cir. 2000) .................................................................. 5

*Richards v. Jefferson County, Ala.*,
   517 U.S. 793 (1996) ..................................................................................... 7

*Riggs v. Aetna Life Ins. Co.*,
   188 Fed. Appx. 659, 2006 WL 1633542 (10th Cir. June 14, 2006) ............ 9

*Riley v. PacifiCare of Okla., Inc.*,
   No. 05-CV-223-TCK-FHM, 2006 WL 8458209 (N.D. Okla. Mar. 17,
   2006) ......................................................................................................... 13

*Robbins v. Okla.*,
   519 F.3d 1242 (10th Cir. 2008) ..................................................... 17, 18, 19

*Settles v. Golden Rule Ins. Co.*,
   927 F.2d 505 (10th Cir. 1991) ................................................................. 14

*Smallen v. The Western Union Co.*,
   950 F.3d 1297 (10th Cir. 2020) .................................................................. 2

*St. Louis Baptist Temple, Inc. v. F.D.I.C.*,
   605 F.2d 1169 (10th Cir. 1979) .................................................................. 2

*Stan Lee Media, Inc. v. Walt Disney Co.*,
   774 F.3d 1292 (10th Cir. 2014) .............................................................. 5, 6

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ................................................................................... 7

*Tucker v. Continental Assur. Co.*,
   No. 05-CV-345-TCK-SAJ, 2006 WL 406591 (N.D. Okla. Feb. 17,
   2006) .................................................................................................. 12, 16

*Yapp v. Excel Corp.*,
   186 F.3d 1222 (10th Cir. 1999) ................................................................ 8

**Statutes**

29 U.S.C. § 1002(1), (3) ................................................................... 11, 13

29 U.S.C. § 1002(7) ............................................................................... 13

29 U.S.C. § 1024(b)(4) .......................................................................... 22

29 U.S.C. § 1132(a) ............................................................................... 15

29 U.S.C. § 1132(a)(1), (c), (d) ............................................................ 19

29 U.S.C. § 1132(c)(1)(B) ............................................................... 21, 22

29 U.S.C. § 1132(g) ............................................................................... 22

29 U.S.C. § 1144(a) ........................................................................... 4, 10

29 U.S.C. § 1332(a) ................................................................................. 4

Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et
   seq.* ......................................................................................................... 1

**Other Authorities**

Fed. R. Civ. P. 8(a) ............................................................................... 17

Fed. R. Civ. P. 8(a)(2) ........................................................................... 17

Fed. R. Civ. P. 12(b)(6) ....................................................... 1, 2, 4, 5, 6, 7, 22

Fed. R. Civ. P. 41(b) ............................................................................... 6

Restatement (Second) of Judgments § 24 .............................................. 8

D. Shapiro, Civil Procedure: Preclusion in Civil Actions, 77-78 (2001) ............................ 7

Pursuant to Rule 12(b)(6), Defendant BP Corporation North America, Inc. ("BP") hereby moves to dismiss the lawsuit for failure to state a claim upon which relief may be granted. This lawsuit is fatally defective for multiple reasons. First, the lawsuit is barred by *res judicata*. The same claims were litigated and/or could have been litigated and were finally adjudicated on the merits last year by this Court, in the lawsuit styled *Roland Huff v. Metropolitan Life Insurance Company*, Case No. 21-CV-0284-CVE ("*Huff I*"). Second, beyond being precluded, Plaintiff's claims are state law claims that are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA").

Finally, Plaintiff does not state an ERISA claim against BP, even if he could resurrect one. Indeed, Plaintiff rejects this Court's ruling that the dispute is governed by ERISA, denies that BP is the Plan Sponsor and Plan Administrator, and alleges BP had "no involvement" and is "not responsible" in this dispute. (Compl. ¶¶ 8, 29, 30, 31, 32, 36). To be sure, as reflected by the Plan documents and as determined in *Huff I*, BP is the Plan Sponsor and Plan Administrator (*via* its Director of Health and Welfare), and this dispute is governed by ERISA. But even if Plaintiff acknowledged the same, the only ERISA claim against BP that could be conjured from the Complaint is one under Section 1132(a)(1)(A), and it would fail on the face of this lawsuit; the information Plaintiff requested – answers to questions from his counsel about the litigation posture in *Huff I* – is not required to be furnished under ERISA.

BP submits the following brief in support.

## BACKGROUND

This case seeks a do-over of *Huff I*, which was resolved by this Court on October 25, 2021. *Huff v. Metro. Life Ins. Co.*, No. 21-CV-0284-CVE, 2021 WL 4952501 (N.D. Okla. Oct. 25, 2021) (*Huff I*, Dkt. 14). Plaintiff acknowledges that this lawsuit arises out of the facts and claims in *Huff I*. (Compl. ¶ 11) Further, the Court may take judicial notice of the contents of its docket in its prior case in ruling on BP's motion to dismiss.[1]

Plaintiff complains about the increasing cost of life insurance benefits for retirees like himself, and the alleged failure to provide information in this regard to his counsel, under the BP Group Universal Life Plan (the "Plan"), an employee benefit plan established and maintained by BP to provide life insurance benefits to current and former employees through a group policy issued by Metropolitan Life Insurance Company ("MetLife"). *Huff*, 2021 WL 4952501 at *1 (*Huff I*, Dkt. 14 at 2). BP is the Plan Sponsor and, further, is the Plan Administrator (through its Director of Health and Welfare); MetLife is the insurer and claims administrator. *Id.* The Court determined that the Plan is an "employee benefit plan" within the meaning of and governed by ERISA. *Id.* at *3 (*Huff I*, Dkt. 14 at 6). BP attaches

---

[1] *See Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) ("A district court . . . may take judicial notice of its own files and records, as well as facts which are a matter of public record, without converting a motion to dismiss into a motion for summary judgment. . . . It, thus, is unremarkable that courts frequently take judicial notice of prior judicial acts found in records and files when evaluating the merits of a purported claim-preclusion defense.") (internal quotes and cites omitted); *see also St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (abrogated on other grounds).

hereto, as Exhibits 1 and 2 respectively, the Plan Document and Summary Plan Description ("SPD") filed and referenced by the Court in *Huff I*.[2]

The SPD, as this Court explained, "outlines continued coverage for retired employees, and notes that '[retirees'] premiums will not be the same as those paid by active BP employees'" and that retirees "'cannot convert [their] GUL coverage to individual coverage.'" *Id.* at *1 (*Huff I*, Dkt. 14 at 2, quoting Dkt. 6-1). (Ex. 2, SPD at 24-25). Further, in 2013, Plaintiff received a letter from MetLife notifying him that "[a]s announced by BP in your Annual Enrollment materials," rates under the Plan would increase effective January 1, 2014. *Id*. at *2 (*Huff I*, Dkt. 14 at 3, quoting Dkt. 3-3).

Eight years later, on July 14, 2021, Plaintiff commenced *Huff I*, naming MetLife as the only defendant. *Id*. at *2 (*Huff I*, Dkt. 14 at 3). Plaintiff alleged that the premium increases under the Plan after the year 2012 were huge and that he had not received

---

[2] The Plan is referenced by and central to the Complaint. As such, its terms are incorporated into the pleadings and may be considered by the Court on this motion to dismiss under Rule 12(b)(6) without converting the motion into one for summary judgment. *See Smallen v. The Western Union Co*., 950 F.3d 1297, 1305 (10th Cir. 2020) ("[On a Rule 12(b)(6) motion to dismiss, the court] may consider documents the complaint incorporates by reference, documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and matters of which a court may take judicial notice.") (internal quotes omitted); *Loden v. Blue Cross and Blue Shield of Okla*., No. 11–CV–0673–CVE–TLW, 2013 WL 5207238, at n.3 (N.D. Okla. Sept. 13, 2013) ("When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court may 'consider documents referred to in the complaint if the documents are central to the plaintiff's claims and the parties do not dispute the documents' authenticity' without converting the motion into a motion for summary judgment. Plaintiff's complaint specifically references the Separation Agreement and it is integral to whether he may pursue claims against defendant, and the Court may consider the Separation Agreement without converting defendant's motion to dismiss into a motion for summary judgment.") (quoting *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 2002)).

explanations in response to his counsel's queries in this regard. *Id*. (*Huff I*, Dkt. 14 at 3, citing Dkt. 3). On the basis of these allegations, Plaintiff asserted claims premised upon Oklahoma state law for breach of contract and tortious breach of the implied covenant of good faith and fair dealing ("bad faith"), and further sought an order compelling production of documents and information. *Id*.

MetLife moved to dismiss *Huff I* pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id*. at **3-4 (Dkt. 14 at 4-8, citing Dkt. 6) MetLife argued that Plaintiff's state law claims were preempted by ERISA because they "relate to" an "employee benefit plan," 29 U.S.C. § 1144(a), and that Plaintiff did not state any claim under ERISA's civil enforcement provisions, 29 U.S.C. § 1332(a). *Id*. The Court agreed and dismissed the lawsuit as pled for failure to state a claim for relief. *Id.* at *4 (Dkt. 14 at 8). However, the Court gave Plaintiff the opportunity to amend his lawsuit, to attempt to state an ERISA claim, including against BP. This opportunity expired November 5, 2021, when Plaintiff failed to amend his Complaint. *Id.* at **4-5 (Dkt. 14 at 8).

Over a month later, on December 14, 2021, Plaintiff filed this lawsuit in state court. (Compl.) As in *Huff I*, Plaintiff alleges that the premium increases under the Plan after the year 2012 were "huge" and that he had not received explanations in response to his counsel's queries in this regard. (Compl. p. 1, n.1, ¶¶ 1, 7-10 & Ex. 1 thereto) As in *Huff I*, on the basis of these allegations, Plaintiff asserts claims premised upon Oklahoma state law for breach of contract and bad faith, and further seeks an order compelling production of documents and information. (Compl. ¶¶ 18-60)

Plaintiff acknowledges that this lawsuit arises out of *Huff I* and that *Huff I* was dismissed. (Compl. ¶¶ 11-12) But he incorrectly deems the dismissal to be without prejudice and otherwise does not accept the Court's prior ruling. He alleges he is entitled to bring this new lawsuit against BP in state court asserting the same state law claims that were dismissed – rather than timely amend his complaint in *Huff I* or timely seek reconsideration of or appeal the Court's order in *Huff I* – on the vague suggestion that the Court in *Huff I* was misled. (Compl. ¶¶ 13-17) Plaintiff is not so entitled.

## ARGUMENT AND AUTHORITY

### I.    PLAINTIFF'S LAWSUIT IS PRECLUDED BY *HUFF I*

"A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (holding limited on other grounds). A party's belief that the judgment was wrong does not alter "the res judicata consequences of a final, unappealed judgment on the merits[.]" *Id*. "A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack but can be corrected only by a direct review and not by bringing another action upon the same cause." *Id*. (internal quotes omitted); *see also MACTEC, Inc. v. Gorelick,* 427 F.3d 821, 831 (10th Cir. 2005) ("The doctrine of res judicata, or claim preclusion, will prevent a party from relitigating a legal claim that was or could have been the subject of a previously issued final judgment.").

*Res judicata* applies when there is "(1) a final judgment on the merits in an earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in

both suits." *MACTEC Inc.*, 427 F.3d at 831; *see also Pelt v. Utah*, 539 F.3d 1271 (10th Cir. 2008). In some cases, the Tenth Circuit has applied an additional requirement that "'the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit.'" *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000) (cite omitted).

**Final Judgment.** It is well-settled that a ruling dismissing a case pursuant to Rule 12(b)(6) for failure to state a claim is a final judgment on the merits. *Stan Lee Media, Inc. v. Walt Disney Co*., 774 F.3d 1292, 1298 (10th Cir. 2014) (citing *Hagans v. Lavine*, 415 U.S. 528, 542 (1974) (superseded by statute on other grounds)); *see also Brownback v. King*, 141 S.Ct. 740, 748 (2021). "Dismissals for failure to state a claim are presumptively with prejudice because they fully dispose of the case." *Stan Lee*, 774 F.3d at 1299 (citing Fed. R. Civ. P. 41(b)); *see also Brereton v. Bountiful City Corp*., 434 F.3d 1213, 1219 (10th Cir. 2006). The possibility of amendment does not negate the finality of a Rule 12(b)(6) dismissal. *Stan Lee*, 774 F.3d at 1299.

Here, the Court dismissed *Huff I* pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Huff*, 2021 WL 4952501 at **4-5. This ruling is presumed to be with prejudice and is a final judgment on the merits. That Plaintiff had an option to amend, which he did not exercise, does not negate the finality of the judgment.

**Identity of Parties.** The plaintiff in *Huff I* is identical to the Plaintiff herein. *See Huff*, 2021 WL 4952501 at *1. Plaintiff is bound by the judgment in *Huff I* dismissing his dispute on the ground of ERISA preemption and for failure to state an ERISA claim.

While BP was not named as a defendant in *Huff I*, BP also is bound by the judgment in *Huff I* precluding this action by Plaintiff. First, Plaintiff "could have" litigated against

BP in *Huff I* and indeed was ordered to amend his lawsuit to add BP if he intended to assert a claim against it, by November 5, 2021. *Huff*, 2021 WL 4952501 at **4-5. Plaintiff declined to do so. He may not now rely upon his own failure to amend to avoid preclusion of his claims against BP in this action.

Second, BP is in privity with MetLife for purposes of preclusion. "A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit," so that applying preclusion principles in such cases "runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008) (quoting *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798 (1996)). However, an exception to this rule exists "when it can be said that there is 'privity' between a party to the second case and a party who is bound by an earlier judgment." *Richards,* 517 U.S. at 798.

"[T]he term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term." *Id.* Preclusion based on privity, *i.e.* nonparty preclusion, "may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment." *Taylor*, 553 U.S. at 894 (quoting D. Shapiro, Civil Procedure: Preclusion in Civil Actions, 77–78 (2001)). Independently, "a nonparty may be bound by a judgment" because it was "'adequately represented by someone with the same interests who [wa]s a party' to the suit." *Id.* at 894 (quoting *Richards*, 517 U.S. at 798 (internal quotes omitted)).

BP and MetLife have a substantive legal relationship. BP is the employer sponsor of the Plan and contracted with MetLife to insure the benefits under the Plan and provide

claims administration with respect thereto. (Ex. 2, SPD at 26-27) Moreover, BP's interests in administering the Plan in accordance with its terms and ERISA are aligned with those of MetLife, which adequately represented those interests in *Huff I*. MetLife filed the Rule 12(b)(6) motion granted by the Court on the ground (a) ERISA preempted Plaintiff's state law claims, and (b) Plaintiff did not state any ERISA claim, whether against MetLife or BP. *Huff*, 2021 WL 4952501 at **4-5.

**Identity of Action.** The Tenth Circuit has adopted the transactional approach of the Restatement (Second) of Judgments § 24 to determine if two cases constitute a single cause of action for purposes of preclusion. *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999). A claim arising out of the same "transaction, or series of connected transactions" as a previous suit, which concluded in a final judgment, is precluded. *Id.* Whether a transaction or series of transactions is the same is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* Certainly, a plaintiff cannot avoid preclusion simply by "[r]eframing the second action" as one premised on a different theory of recovery. *McCarty v. First of Georgia Ins. Co.*, 713 F.2d 609, 612 (10th Cir. 1983).

As explained above, *Huff I* and this case arise out of the same transaction or series of connected transactions: the increasing cost to Plaintiff of retiree life insurance benefits under the Plan and his counsel's queries in this regard. The facts are related in time, space, origin, and motivation. Plaintiff even reasserts here the same state law theories of recovery

8

– for breach of contract and bad faith – that he asserted and that were found preempted in *Huff I*. To the extent the Complaint suggests a new theory, *e.g.* under ERISA, it still arises out of the same transaction or series of transactions of *Huff I* and, indeed, could have been asserted in *Huff I* at the invitation of the Court.

This Court has dismissed actions on grounds of *res judicata* in similar circumstances. In *Cameron v. The Forest Hills IPA, Inc*., No. 09–CV–0311–CVE-PJC, 2009 WL 3334930 (N.D. Okla. Oct. 13, 2009), for example, the Court addressed attempted relitigation of an employee benefit plan participant's dispute arising from denial of benefits. The plaintiff asserted claims against the plan sponsor and administrator arising out of the same benefit dispute that had been finally decided in a prior action. *Id*. at **1-6. Notwithstanding that the plaintiff's new claims against the plan sponsor and administrator were premised upon different theories of recovery than the claims in the first action, the Court dismissed them, finding the claims were "barred by res judicata" because they arose out of the same transactions, and the plaintiff "could have litigated her claims against these parties in" the first lawsuit. *Id*. at *7.[3]  Likewise, this action should be dismissed.

**Opportunity to Litigate.** Again, "[t]he doctrine of res judicata, or claim preclusion, will prevent a party from relitigating a legal claim that was or *could have been* the subject of a previously issued final judgment." *MACTEC, Inc*., 427 F.3d at 831 (emphasis added). Not only could Plaintiff have litigated his claims against BP in *Huff I*, he was required to

---

[3] *See also Riggs v. Aetna Life Ins. Co*., 188 Fed. Appx. 659, 2006 WL 1633542 at *2 (10th Cir. June 14, 2006) (affirming dismissal on ground employee benefit plan participant precluded by prior lawsuit from bringing new theories of recovery in case arising out of the same insurance policy dispute).

do so by invitation of the Court. *Huff*, 2021 WL 4952501 at **4-5. Plaintiff may not start over with a new case after declining the invitation.

Further, Plaintiff had the opportunity to appeal the judgment in *Huff I,* which he claims herein was wrong. But he did not appeal. Plaintiff does not get a fresh cause of action just because he disagrees with the judgment. Even if the Tenth Circuit would have reversed the judgment in *Huff I*, this action is precluded because Plaintiff did not seek review. The judgment in *Huff I* is final and directs dismissal of Plaintiff's improper attempt to avoid it. *See e.g. Federated Dept. Stores, Inc.*, 452 U.S. at 398 (affirming dismissal of an action refiled by plaintiff since, while a similar judgment in the action was reversed on appeal as to co-plaintiffs, the plaintiff did not join in appeal).

This lawsuit should be dismissed on the ground it is barred by *res judicata*.

## II.   PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY ERISA

Even if Plaintiff's claims herein were not barred by *res judicata*, they would be preempted by ERISA. ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). ERISA's express preemption provision operates as an affirmative defense to bar state law claims as a matter of law. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138-44 (1990) (not followed as dicta on other grounds) (holding district court properly disposed as a matter of law of state law claims preempted by ERISA); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44-57 (1987) (superseded by statute on other grounds) (same).

Express preemption serves the purpose of ERISA to "promote the interests of employees . . . in employee benefit plans," *Ingersoll-Rand*, 498 U.S. at 137 (internal quotes

omitted), by ensuring a "uniform body of benefits law" that "minimize[s] the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government," *id*. at 142. "Congress enacted ERISA to ensure that employees would receive the benefits they had earned, but Congress did not require employers to establish benefit plans in the first place." *Conkright v. Frommert*, 559 U.S. 506, 516 (2010). Therefore, "ERISA represents a careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Id*. at 517 (internal quotes omitted). "Congress sought to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place. ERISA induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Id*. (internal quotes omitted).

In order to fulfill ERISA's purpose, ERISA express preemption is "deliberately expansive." *Pilot Life*, 481 U.S. at 45-46; *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Where the plaintiff's state law claims "relate to" an "employee benefit plan," they are preempted by ERISA and foreclosed as a matter of law.

**"Employee Benefit Plan."** ERISA defines an "employee benefit plan," including an "employee welfare benefit plan," as a "plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise" certain "benefits," including "in the event of . . . death." 29 U.S.C. § 1002(1), (3). The term

11

"employee benefit plan" is construed broadly. *See Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043, 1046-49 (10th Cir. 1992). As held by this Court in *Huff* No. 1, the Plan is an "employee benefit plan" within the meaning of ERISA. *Huff*, 2021 WL 4952501 at *3.

The Plan is a "plan, fund, or program," as is ascertainable by a plan participant from the SPD, which outlines the intended benefits, class of beneficiaries, source of financing, and procedure for receiving benefits. *See Peckham*, 964 F.2d at 1048. The intended benefits are life insurance benefits, the class of beneficiaries are current and former employees, the source of financing is contributions from BP and participants, and the procedure for receiving benefits is to initiate a claim with BP and pursue any dispute through the Plan's administrative processes. (Ex. 2, SPD)[4]

The Plan is "established or maintained by an employer" because BP, an employer, made the Plan part of the employment relationship and is significantly involved in maintaining the Plan. *See Peckham*, 964 F.2d at 1049. BP purchased an insurance policy from MetLife with the "expressed intention . . . to provide benefits on a regular and long term basis," *id*., as part of BP's employment relationship and in accordance with ERISA. (Ex. 1, Plan Doc. at ¶¶ 1.1, 1.2; Ex. 2, SPD at 32) BP is the Plan Sponsor and operates through its Director of Health and Welfare as the Plan Administrator, with "the authority

---

[4] *See, e.g., Tucker v. Continental Assur. Co*., No. 05-CV-345-TCK-SAJ, 2006 WL 406591 at *2 (N.D. Okla. Feb. 17, 2006) ("The intended benefits are the life insurance benefits which Plaintiffs did not receive but claim that they are owed. The class of beneficiaries is the Cardinal employees and their eligible dependents, in this case the spouses of the Cardinal employees. The source of financing is the group life insurance and the procedures for receiving benefits are included within the benefits documents information submitted by Defendant as Exhibits 1 and 2 to their Motion to Dismiss.").

to control and manage the operation and administration of the plan." (Ex. 2, SPD at 27) Specifically, the Plan Administrator has the authority to "contract[] with a claims administrator"; determine "whether an individual is eligible for or entitled to plan benefits"; "interpret[] plan provisions"; and "establish[] rules and procedures for plan administration." (Ex. 2, SPD at 27).[5]

Finally, it is plain from the Plan terms that BP established and maintains the Plan with the "purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise" certain "benefits," including "in the event of . . . death." 29 U.S.C. § 1002(1), (3).  The Plan provides life insurance benefits to participants, which include retirees,[6] through a group policy issued by MetLife. (Ex. 2, SPD at 24, 26) BP's purpose in this regard is express. (Ex. 1, Plan Doc. at ¶¶ 1.1, 1.2; Ex. 2, SPD at 32)

---

[5] *See, e.g., Peckham,* 964 F.2d at 1049 ("Given that AAA joined IMET in order to obtain insurance for its employees, purchased basic insurance from Gem for its employees, and listed insurance in its company manual as an employment benefit, AAA's plan was clearly part of its employment relationship with its employees. Thus, AAA's plan satisfies the 'established or maintained' requirement."); *Tucker v. Continental Assur. Co*., No. 05-CV-345-TCK-SAJ, 2006 WL 406591 at *3 (N.D. Okla. Feb. 17, 2006) ("In this case, the plan was established and maintained by Cardinal for its employees and eligible dependants. Cardinal is the plan sponsor and administrator. Cardinal is the policyholder and the certificate provides that the plan is maintained by Cardinal. There is evidence of Cardinal's intention to provide benefits on a long-term basis. Cardinal paid a portion of the premiums. Plaintiffs' purchase of insurance was not an isolated or aberrational incident, but was part of a comprehensive insurance program.") (internal cites and quotes omitted); *Riley v. PacifiCare of Okla., Inc*., No. 05-CV-223-TCK-FHM, 2006 WL 8458209, at *2 (N.D. Okla. Mar. 17, 2006) ("[T]he employer selected the plan to offer it as part of a benefit package to its employees and entered into a contract with PacifiCare for that purpose.").

[6] A "participant" within the meaning of ERISA includes "any employee or former employee of an employer[.]" 29 U.S.C. § 1002(7).

**"Related To."** ERISA express preemption is "conspicuous for its breadth," *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990), "establish[ing] as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *Id*. As such, the words "relate to" are construed broadly.

"'A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Ingersoll-Rand*, 498 U.S. at 139 (internal quotes omitted). In other words, "where the existence of ERISA plans is essential to the law's operation . . ., that 'reference' will result in pre-emption.'" *Gobeille v. Liberty Mut. Ins. Co*., 577 U.S. 312, 319-20 (2016) (quoting *Cal. Div. of Labor Standard Enf't v. Dillingham Constr., N.A., Inc*., 519 U.S. 316, 325 (1997)). A "connection with" an ERISA plan means the state law "'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" *Id.* (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)).

Under these standards, it is well-settled that state common law claims brought by a plan participant "relate to" an employee benefit plan where the factual foundation of such claims involves an employee benefit plan. *See Pilot Life*, 481 U.S. at 47-48; *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987) (superseded by statute on other grounds).[7] Thus, the Tenth Circuit has found state common law claims like the ones Plaintiff asserts here, seeking compensatory, punitive, and/or equitable relief, including for breach of contract,

---

[7] *See also Settles v. Golden Rule Ins. Co*., 927 F.2d 505, 509 (10th Cir. 1991) ("common law tort and breach of contract claims are preempted by ERISA if the factual basis of the cause of action involves an employee benefit plan").

bad faith, and fraud, are expressly preempted by ERISA. For example, in *Settles v. Golden Rule Ins. Co.*, the Tenth Circuit determined that breach of contract and tort claims arising from termination of life insurance plan coverage were preempted by ERISA, because "[t]he factual basis for each of plaintiff's state law claims directly concerns the alleged improper administration of the benefit plan." 927 F.2d 505, 509 (10th Cir. 1991).[8]

Plaintiff's claims seeking compensatory, extra-contractual, and punitive damages not only are expressly preempted by ERISA, they are conflict preempted by ERISA because they attempt to supplement or supplant ERISA's remedial scheme by providing "remedies beyond those authorized under ERISA[.]" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 215 (2004). ERISA provides the exclusive means to redress employee benefit plan violations, 29 U.S.C. § 1132(a), and these remedies are equitable in nature. "[D]amages, in the form of monetary compensation for economic or other harm suffered .

---

[8] *See also Kelso v. Gen. Am. Life Ins. Co.*, 967 F.2d 388, 389-91 (10th Cir. 1992) (breach of contract and misrepresentation claims brought by plan participant contesting determination of eligibility for life and health insurance benefits were preempted by ERISA); *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1211-12 (10th Cir. 2006) (breach of contract claim by plan participant seeking greater life insurance coverage notwithstanding failure to pay applicable premium was preempted by ERISA); *Allison v. Unum Life Ins. Co. of Am.*, 381 F.3d 1015, 1025-27 (10th Cir. 2004) (Oklahoma state law claims for bad faith and punitive damages arising from eligibility determination under employee benefit plan were preempted by ERISA); *Cannon v. Grp. Health Serv. of Okla.*, 77 F.3d 1270, 1271-74 (10th Cir. 1996) (plan participant's Oklahoma state law breach of contract, bad faith, and breach of fiduciary duty claims were preempted by ERISA); *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 962 (10th Cir. 2011) (state law claim seeking equitable relief with respect to plan amendments reducing life insurance benefits was expressly preempted by ERISA).

. . are not available under ERISA." *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1234 (10th Cir. 2002).[9]

The foundation for all of Plaintiff's claims involves an employee benefit plan. Plaintiff challenges the increasing cost of benefits under the Plan and questions disclosure obligations related thereto. (Compl.) Plaintiff's claims plainly "relate to" the Plan such that they are expressly preempted by ERISA. Plaintiff's claims seeking compensatory, extra-contractual, and punitive damages further are preempted by ERISA because they conflict with ERISA's exclusive remedial regime. Indeed, this Court already has determined in *Huff I* that Plaintiff's claims are preempted by ERISA. *Huff*, 2021 WL 4952501 at *4.

This Court regularly dismisses state law claims such as those brought here by Plaintiff, on the ground of ERISA preemption, including as demonstrated in *Huff I*.[10]

---

[9] *See also Koble v. United Health Care, Inc.*, No. 14–CV–0391–CVE–PJC, 2014 WL 4748609, at *3 (N.D. Okla. Sept. 23, 2014) ("ERISA permits a plaintiff to recover equitable relief, but it does not authorize the award of compensatory or punitive damages.") (citing *Kidneigh v. UNUM Life Ins. Co. of Am.*, 345 F.3d 1182, 1185 (10th Cir. 2003)); *McKinnon v. Doyle & Linda, Inc.*, No. 09-CV-0178-CVE-PJC, 2009 WL 1619951, at *2 (N.D. Okla. June 9, 2009) ("With regard to plaintiff's request for punitive damages, the Tenth Circuit has made clear that extra-contractual damages are not recoverable under ERISA. Accordingly, plaintiff is not entitled to punitive damages or any other relief other than what is provided for under ERISA[.]") (internal cites omitted).

[10] *See also Tucker v. Continental Assur. Co.*, No. 05-CV-345-TCK-SAJ, 2006 WL 406591 at *1-5 (N.D. Okla. Feb. 17, 2006) (granting motion to dismiss ERISA-preempted state law claims, including for fraud and "including any claims seeking extra-contractual damages, compensatory relief, or punitive damages," arising out of alleged failure to disclose requirements for enrollment in life insurance under employee benefit plan); *Koble v. United Health Care, Inc.*, No. 14–CV–0391–CVE–PJC, 2014 WL 4748609, at *4 (N.D. Okla. Sept. 23, 2014) (dismissing state law claims for breach of contract, bad faith, and punitive damages arising from denial of claim for life insurance benefits under ERISA employee benefit plan); *Divine v. Life Ins. Co. of N. Am.*, No. 06-CV-0099-CVE-PJC, 2006

Likewise, Plaintiff's state law claims herein are subject to dismissal; not only are they precluded by *Huff I*, they are preempted like they were in *Huff I*.

## III.   PLAINTIFF DOES NOT STATE A CLAIM FOR RELIEF UNDER ERISA

Finally, while this Court gave Plaintiff an opportunity to state an ERISA claim in *Huff I*, Plaintiff did not take it. The deadline by which Plaintiff was required to assert an ERISA claim, including against BP, expired November 5, 2021. *Huff*, 2021 WL 4952501 at **4-5. As set forth above in Part I, Plaintiff may not now assert an ERISA claim, even if he tried. To be sure, as set forth below, Plaintiff does not even try, certainly not with sufficient plausibility. And even speculating, the only ERISA claim that might be constructed from Plaintiff's allegations, for Section 1132(c) penalties, fails on the face of the Complaint. Not only is it precluded by *Huff I*, it is not premised upon any failure to provide information required to be furnished under ERISA.

### A.   <u>Plaintiff Does Not State A Plausible ERISA Claim</u>

 "The purpose of a modern complaint is to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief." *Monument Bldrs. of Greater Kans. City, Inc. v. Am. Cemetery Ass'n of Kans.*, 891 F.2d 1473, 1480 (10th Cir. 1989) (quotes and cites

---

WL 2054075, at *1-2 (N.D. Okla. July 24, 2006) (granting motion to dismiss plan participant's action for bad faith because preempted by ERISA); *Blackwell v. UNUM Life Ins. Co. of Am.*, No. 04-CV-60-GKF-PJC, 2008 WL 2199711, at *1 (N.D. Okla. May 23, 2008) (dismissing tort claims, including for bad faith, on ground of ERISA preemption).

omitted).[11] The Complaint must "show[] that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is necessary to ensure due process. "[W]hen a defendant is summoned before a federal court to answer to a claim for damages or to a demand for an injunction against him, there must be a 'plain statement of the claim showing that the pleader is entitled to relief.'" *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 177 (1951) (quoting Fed. R. Civ. P. 8(a)). "[D]ue process requires no less." *Id*. at n.3.

"The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id*. Specifically, "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id*. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint "has facial plausibility" only if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Finding an ERISA claim in the Complaint requires the Court not only to speculate but to reject Plaintiff's allegations and redraft them. As an initial matter, the Complaint

---

[11] *See also F.D.I.C. v. Grant*, 8 F. Supp. 2d 1275, 1287 (N.D. Okla. 1998) ("The touchstone of Rule 8's notice pleading regime is fair notice.") (citing *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1386 (10th Cir. 1980)).

only purports to state claims and seek relief under state law. (Compl.) This is despite the Court ruling that such claims are preempted by ERISA. *Huff*, 2021 WL 4952501 at *4.

Moreover, an ERISA claim is not plausibly inferred from Plaintiff's state law claims. Plaintiff continues to blame *MetLife*, not BP, for the cost of life insurance benefits under the Plan and the allegedly inadequate disclosure of information related thereto. (Compl. ¶ 8) ("Any questions and correspondence about the subject policy have always been between MetLife and Plaintiff. As far as Plaintiff knows, BP has no involvement or dealings with the subject policy. None at all."). Indeed, Plaintiff threatens to sue MetLife again "depending upon what is discovered during this lawsuit[.]" (Compl. ¶ 12)

But, as this Court found in *Huff I*, Plaintiff states no ERISA cause of action against MetLife; MetLife is not the Plan Administrator. *Huff*, 2021 WL 4952501 at *4. An action by a participant under ERISA's remedial scheme, whether (a) for penalties for failure to provide information required by ERISA to be furnished or (b) for recovery of benefits due or enforcement of rights under the Plan, is actionable only against the Plan Administrator (or the Plan itself). 29 U.S.C. § 1132(a)(1), (c), (d).

BP (through its Director of Health and Welfare) is the Plan Administrator, as identified by the Plan and as confirmed by this Court in *Huff I*. *Huff*, 2021 WL 4952501 at *1. (Ex. 2, SPD at 26). Plaintiff has been on notice that BP is the proper party against whom to assert an ERISA claim since he became a participant in the Plan; and any confusion in this regard was not an excuse, certainly not after the Court in *Huff I* cleared it up and ordered Plaintiff to amend his lawsuit if he intended to assert an ERISA claim against BP.

19

*Id.* at **4-5. Plaintiff's continued rejection of the Plan terms and the Court's ruling thereon is untenable to say the least. (Compl. ¶¶ 30, 32)

Plaintiff states no plausible ERISA claim. Dismissal is warranted for this reason alone. *See e.g. Robbins*, 519 F.3d at 1249-50 (refusing to speculate and dismissing complaint, which did not "give the defendants notice of the theory under which [plaintiffs'] claim is made").

### B.    Plaintiff's Only Speculative ERISA Claim Fails On Face of Complaint

Even speculating about a potential ERISA claim does not yield a viable one. Plaintiff does not seek recovery of benefits due or enforcement of rights under the Plan, for purposes of a claim under ERISA Section 1132(a)(1)(B). Nor does Plaintiff seek an injunction or other equitable relief to redress a violation of or enforce ERISA or the terms of the Plan, so as to afford a remedy under ERISA Section 1132(a)(3). Payment of benefits is not the issue; the issue is cost of benefits. But Plaintiff does not claim a right to a certain cost of life insurance under ERISA or the terms of the Plan.

Rather, Plaintiff vaguely alleges he is not happy with the increases in the cost of benefits for retirees after 2012. (Compl. p. 1, n.1, ¶¶ 7-10) But Plaintiff does not point to any ERISA or Plan term prohibiting these increases. Indeed, the Plan expressly notifies retirees that the cost of their benefits may be greater than the cost to active employees, and that this cost further increases with age. (Ex. 2., SPD at 6-7, 24) And, according to Plaintiff's exhibit attached to his complaint in *Huff I*, the Plan specifically announced in 2013 an increase in the cost of retiree benefits effective for subsequent years. *Huff*, 2021

WL 4952501 at *2 (*Huff I*, Dkt. 14, citing Dkt. 3-3). Plaintiff has been on notice of the increasing cost to him under the Plan with each bill he paid since 2012.

In any event, Plaintiff's litigation complaint over eight years later about the increase in the cost of benefits under the Plan continues to be aimed exclusively at MetLife. Plaintiff alleges BP had "no involvement or dealings with the subject policy" (Compl. ¶ 8) and "is not [sic] responsible for the huge increases in Plaintiff's premiums" (Compl. ¶ 31).

The only dispute Plaintiff alleges he has with BP arises from his lawyer's request, beginning in August 2021, for information relevant to the litigation posture of *Huff I*. (Compl. ¶¶ 10-35) MetLife filed its Rule 12(b)(6) motion in *Huff I* on August 11, 2021, identifying BP as the Plan Administrator and seeking dismissal on the basis of ERISA preemption. (*Huff I*, Dkt. 6) By letter dated August 18, 2021, attached to the Complaint in this action as Exhibit 2, Plaintiff's attorney asked a BP benefits representative, Tonya, a series of questions in an attempt to explore an oppositional response to MetLife's motion in *Huff I*. (Compl. ¶¶ 15-16, 19 & Ex. 2) Plaintiff's attorney did _not_ request a copy of the SPD attached to MetLife's motion, or any other Plan document, in order to confirm the veracity of MetLife's representations based thereon. (Compl. Ex. 2)

Rather, Plaintiff's attorney asked Tonya questions as to whether MetLife is "correct" about BP's status as Plan Sponsor and Plan Administrator, why MetLife believes BP has authority to manage the Plan and make cost increases, and whether the Plan is governed by ERISA. (Compl. Ex. 2) Plaintiff then responded to MetLife's motion to dismiss, opposing dismissal on the ground questions were generated by his correspondence and conversations with Tonya. (*Huff I*, Dkt. 12) (Compl. ¶ 15)  MetLife filed a reply brief

21

arguing that this correspondence and conversation did not negate the terms of the Plan or the application of ERISA. (*Huff I*, Dkt. 13) The Court agreed and dismissed the case on October 25, 2021. *Huff*, 2021 WL 4952501 at \*\*4-5 (*Huff I*, Dkt. 14). (Compl. ¶ 16)

Now, Plaintiff purports to revive not just his dismissed lawsuit but the correspondence and conversations upon which he premised his failed opposition to dismissal. This time, Plaintiff alleges BP did not answer his questions and that this failure gives rise to the cause of action referenced in the SPD for failure to provide requested Plan materials within 30 days. (Compl. ¶¶ 36-39 & Ex. 3) Ignoring Plaintiff's allegation that his lawsuit does not arise under ERISA, the referenced cause is an action under ERISA Section 1132(a)(1)(A), for penalties under Section 1132(c) for a plan administrator's failure "to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary[.]" 29 U.S.C. § 1132(c)(1)(B).

Ignoring, further, that such an ERISA action is precluded by *Huff I*, the action would yet fail. The only "information which such administrator is required by this subchapter to furnish a participant" if requested, 29 U.S.C. § 1132(c)(1)(B), is a copy of the "summary plan description" or "the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Plaintiff did not request any of these documents from BP. Indeed, Plaintiff has had the Plan SPD in his possession at least since *Huff I*. Rather, Plaintiff sought answers to questions related to the litigation posture of *Huff I*. This is not the kind of information that a Plan Administrator is required to provide on

22

pain of ERISA penalty; indeed, it is the kind of information that arguably is protected from disclosure by the attorney-client privilege.

Even the most generous approach to this action, *Huff II*, directs dismissal.

## CONCLUSION

For any or all of the reasons outlined above, BP requests that the Court dismiss the case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. BP further seeks an award of attorney fees, including under 29 U.S.C. § 1132(g), for its efforts in responding to a lawsuit that plainly is precluded by the judgment in a prior action and otherwise is void of merit.


Respectfully submitted,


/s Alison M. Howard
Alison M. Howard, OBA #19835
CROWE & DUNLEVY,
A PROFESSIONAL CORPORATION
The Braniff Building
324 North Robinson, Suite 100
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-7700
Facsimile:  (405) 239-6651
alison.howard@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT,
BP CORPORATION NORTH AMERICA,
INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of January, 2022, I electronically transmitted the attached document to the Court Clerk using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

    Jeffrey A. Martin
    P.O. Box 18425
    Oklahoma City, OK  73154
    jm8069337@aol.com

                                    /s Alison M. Howard