# The Jere Beasley Report

*March 2019*




depreciating the cost of labor violates the contract.

State Farm filed an interlocutory appeal of the judge's order, bringing the case before the Sixth Circuit. In an opinion issued last October, a 2-1 panel of the appellate court noted that courts around the country have split on whether insurers can depreciate labor costs to reach their ACV calculations. However, the majority said State Farm's cited opinions were issued by courts in states that approach ACV issues differently from Kentucky.

By contrast, the majority found persuasive several rulings favoring Hicks and Williams' position, as those cases were decided in states with laws or regulations mirroring the Bluegrass State's. Under applicable insurance legal principles, it held, Hicks and William's interpretation of the term as excluding labor costs must be accepted. Senior U.S. Circuit Judge Eugene E. Siler Jr. wrote for the majority:

> *A reasonable construction of the insurance policies in this case is that labor is not included in depreciation. Thus, the district court correctly concluded that depreciating labor does not make the policyholder whole but rather frustrates the indemnity purpose of ACV coverage.*

After the case was remanded, Judge Wilhoit held a hearing in December on the Plaintiffs' class certification motion and issued an oral ruling granting the motion. In last month's written order, the judge said all of the requirements for class certification had been satisfied, including numerosity, commonality and typicality.

Judge Wilhoit pointed out that according to remarks by State Farm's own counsel, the insurer withheld labor costs from about 11,800 ACV payments made on Kentucky properties between February 2013 and July 2015. That number "easily satisfies" the numerosity requirement for class certification, the judge said. Moreover, the core question of whether State Farm's practice of depreciating labor costs was improper can be efficiently decided in a class action, the judge found. He wrote:

> *This common question, posed in the context of State Farm's uniform claim handling practices, will yield a common answer for the entire class that goes to the heart of*

whether [State Farm] will be found liable under the relevant laws.

Judge Wilhoit did, however, decline the Plaintiffs' request to extend the class period as far back as Feb. 28, 2004. The claims of those proposed class members may run afoul of State Farm's one-year limitations clause for contractual suits, the judge said. Judge Wilhoit wrote:

> *[W]ithout deciding the merits of plaintiffs' arguments seeking to avoid State Farm's one-year contractual suit limitations clause for certain proposed class members, the court finds that those arguments, even if successful, might result in a class that includes members who do not satisfy the commonality requirement. This is because the potential class members who must rely on exceptions to the suit limitations clause may have to rely on proof that is not common to other class members, thus defeating commonality.*

Therefore, the judge limited the class period to exclude claims for losses that occurred more than one year before Hicks and Williams filed suit on Feb. 28, 2014.

Hicks and Williams are represented by Erik D. Peterson, Philip Gray Fairbanks, M. Austin Mehr and Bartley K. Hagerman of Mehr Fairbanks & Peterson, J. Morgan Smith of Richardson & Smith PSC, and Paula Richardson of Richardson Barber & Williamson PSC. The case is *Hicks et al. v. State Farm Fire & Casualty Co.*, (case number 18-5104) in the U.S. Court of Appeals for the Sixth Circuit.

Source: Law360.com

### TRANSAMERICA SETTLES UNIVERSAL LIFE INSURANCE CASE FOR $121 MILLION

A federal judge in the Central District of California has approved a $121 million settlement in Feller v. Transamerica Life Insurance Co., No. 2:16-cv-01378 (C.D. Cal.). The Plaintiffs in the Feller had case alleged that Transamerica dramatically increased the applicable monthly deduction rate (MDR) in 2015 in order to induce "shock lapses" and avoid paying out death benefits to Plaintiffs. The appeal came on Feb. 7, 2019.

Additionally, because Transamerica allegedly depleted its capital reserves, and the low interest rate economy undermined the profitability of Plaintiffs' policies, the Plaintiffs alleged that Transamerica increased MDRs to recoup past losses and avoid its obligation to meet the high interest rates it guaranteed under Plaintiffs' policies.

This consolidated class action litigation comprises a nationwide class of an estimated 69,000 Transamerica universal life policyholders who were subject to MDR increases in 2015 and 2016. The court granted class certification to Plaintiffs more than a year ago.

Transamerica agreed to settle the litigation last year for $195 million. However, a handful of large institutional investor groups holding more than 500 in-force policies opted out of the settlement, and the relief that would have been distributed to those policyholders was subtracted from the overall settlement fund.

Ultimately, Transamerica will pay about $110.7 million into a common fund to be distributed to both customers whose policies are in force and those whose policies were terminated or lapsed after the increases first took effect. Transamerica has also agreed not to impose any further increases in the monthly deduction rates applicable to class members' policies for a period of five years unless ordered to do so by regulators.

The judge's order also requires Transamerica to immediately pay the first $10 million of attorneys' fees and expenses awarded, with the remaining $18.7 million to be paid out of the common fund. Each of the eight individual Plaintiffs were awarded service awards of $10,000 each.

Transamerica is not the only insurance company raising premiums and cost of insurance in order to account for its financial losses. Multiple other life insurers have sent their universal life and/or flexible premium policyholders letters informing them of an upcoming raise in costs—usually claiming these increases are due to "an increase in mortality rates." Beasley Allen lawyers have filed suits against several other companies who have engaged in such conduct—including Banner Life Insurance Company, William Penn Life Insurance Company of New York, and U.S. Financial Life Insurance Company—and we are currently investigating others.

If you have seen this practice by any life insurance company, there may be a claim that lawyers in our firm would like to investigate. Contact Andrew Brashier, Rachel Boyd or Paul Evans, lawyers in our

Consumer Fraud & Commercial Litigation Section, at 800-898-2034 or by email at Andrew.Brashier@beasleyallen.com, Rachel.Boyd@beasleyallen.com, or Paul.Evans@beasleyallen.com.

### PROPERTY DAMAGE CLAIMS AND DEPRECIATION

Spring is around the corner and already homeowners are taking a beating with inclement weather. Hurricane Michael wreaked havoc during hurricane season and Wetumpka's historic downtown suffered from a catastrophic tornado only weeks ago. Warmer weather brings spring showers and the risk of straight-line winds and tornados. Although native Alabamians are used to these seasonal inconveniences, such weather can greatly impact your bottom line if your homeowner's insurance fails to properly adjust your claim.

Many insurance companies utilize internally or have their adjusters use Xactimate software in order to adjust claims. This software is a tool making it easier for adjusters to quickly estimate the amount of a property loss. However, several insurance companies are directing their adjusters to modify the Xactimate settings so it automatically depreciates the labor costs to repair and replace the damages to consumers' properties. Such depreciation on labor is not allowed in many insurance policies nationwide.

Beasley Allen lawyers are currently representing a manufactured home owner who suffered a property loss in Alabama. Our client was provided an estimate for the damages to his manufactured home and was subsequently denied payment of his claim due to his loss being less than his deductible after depreciation. Unfortunately for our client, the adjuster's estimate depreciated labor costs to repair and replace a number of items to his manufactured home and property, which led to him barely not meeting his deductible. Our client's case is pending against Allstate in the Northern District of Alabama on behalf of all policyholders in Alabama with Allstate property insurance.

Consumers are strongly advised to review their homeowner's policy to determine whether the insurance company has the express right to depreciate labor costs on property loss claims. Additionally, if a consumer is filing a claim, it is important to keep a copy of all documents and communications, especially any adjuster estimate provided to you. Most insurance policies and related communications are obtuse and confusing for the policyowners. Therefore, it is recommended you seek legal counsel to ensure you understand the coverage you have and to determine whether labor costs may be depreciated from property loss claims under your respective policy.

Anyone filing a property damage claim with their insurance company is strongly urged to seek legal counsel before doing so. Your property damage claim may be shortchanged by the insurance company due to improper labor depreciation or undervaluing the extent of your property damages. Lawyers at Beasley Allen are experienced with insurance property claims and are able to assist in the process to help you get what you deserve. If you have any information and would like to speak with a lawyer, contact Andrew Brashier, Paul Evans or Rachel Boyd, lawyers in our Consumer Fraud & Commercial Litigation Section at 800-898-2034 or by email at Andrew.Brashier@beasleyallen.com, Paul.Evans@beasleyallen.com or Rachel.Boyd@beasleyallen.com.

## XVIII. TOXIC TORT LITIGATION CONCERNS

### PETITION TO EPA TO REQUIRE ASBESTOS REPORTING ON IMPORTS AND USES

Asbestos is undeniably one of the most dangerous materials in existence; according to multiple government agencies, there is no safe level of exposure. Research suggests that asbestos is related to approximately 40,000 deaths in the U.S. each year. Asbestos importation to the U.S., however, continues to thrive. According to research conducted by the Asbestos Disease Awareness Organization (ADAO), asbestos imports actually increased in 2018. Fortunately, the asbestos industry may soon be required to file reports on its asbestos imports and products containing asbestos and to provide information regarding their use and location.

In late January, several attorneys general united and petitioned the Environmental Protection Agency (EPA) seeking reporting requirements and the disclosure of critical information regarding asbestos. This petition, however, is not the first of its kind. In September 2018, ADAO filed a "Right to Know" petition under the Toxic Substances Control Act (TSCA) but it was ultimately denied by the EPA the following December.

Based on information provided in the ADAO petition, the largest importer of asbestos neglected to notify the EPA of the amounts it was importing due to a loophole in the regulations exempting asbestos from reporting requirements. The EPA, however, refused to acknowledge the loophole or address its far-reaching implications. Recently, ADAO sent the EPA Acting Administrator, Andrew Wheeler, a letter seeking the reversal of his denial to its petition and addressing the errors of law and fact on which it was based.

If you need more information on this subject, contact Sharon Zinns, a lawyer in our firm, at 800-898-2034 or by email at Sharon.Zinns@beasleyallen.com.

Source: Press Release: 15 Attorneys General Take Action by Petitioning the EPA to Require Reporting on Asbestos Imports and Uses http://bit.ly/2RrmMzv

### HONEYWELL SETTLES ASBESTOS LAWSUIT BEFORE JURY AWARDS $18 MILLION

Honeywell International has agreed to settle claims that its automotive brakes caused a mechanic's fatal mesothelioma. The settlement was agreed to by the parties after closing arguments and while the jurors were deliberating. The federal court jury found the company partially liable for the man's death. The Little Rock jury returned an $18 million verdict in favor of Plaintiff Michael Lyn Thomas. The Plaintiff claimed that Honeywell and Ford Motor Co. were responsible for the death of his father Ronald Burlie Thomas from the asbestos-caused cancer. Honeywell predecessor Bendix Corp. produced the brakes that the jurors found exposed the worker to asbestos.

The jury found that Ford was not responsible for the workers' disease, but that Honeywell bore 18.75 percent of the blame, and the worker himself bore 5 percent. The remaining blame was apportioned to non-parties, including Pneumo Abex LLC, which settled the claims against it during jury selection.

The jury awarded $5.55 million in damages to the Plaintiff for his father's pain and suffering, and $1 million each for the mental anguish suffered by his three children, Michael Thomas, Kara Bryant