# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROLAND K. HUFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 22-CV-044-GKF-JFJ |
| BP CORPORATION NORTH AMERICA, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT
## AND BRIEF IN SUPPORT

---

Alison M. Howard, OBA #19835
CROWE & DUNLEVY,
A PROFESSIONAL CORPORATION
The Braniff Building
324 North Robinson, Suite 100
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-7700
Facsimile:  (405) 239-6651
alison.howard@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT,**
**BP CORPORATION NORTH AMERICA,**
**INC.**

July 7, 2022

## TABLE OF CONTENTS

BACKGROUND ....................................................................................................... 2

ARGUMENT AND AUTHORITY ........................................................................... 8

Standard .................................................................................................................... 8

I.    PLAINTIFF HAS NO ERISA OR PLAN RIGHT TO INFORMATION TO
      EXPLORE STATE LAW CLAIMS ............................................................ 9

II.   PLAINTIFF HAS NO ERISA CLAIM FOR ALLEGED OVERCHARGE ............ 12

A.    Plaintiff States No Violation ................................................................... 13

B.    Plaintiff's Claim Is Barred By Acquiescence ......................................... 16

C.    Plaintiff's Claim Is Barred By the Statute of Limitations ........................ 17

III.  PLAINTIFF HAS NO CLAIM FOR COURT-SPONSORED RELIEF ................. 18

CONCLUSION ....................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases** ...............................................................................................................**Page(s)**

*Ashcroft v. Iqbal*,
      556 U.S. 662 (2009) ...................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
      550 U.S. 544 (2007) ...................................................................................... 8

*Chastain v. AT&T*,
      No. CIV-04-0281-F, 2007 WL 3357516 (W.D. Okla. Nov. 8, 2007) ........................ 16

*F.D.I.C. v. Grant*,
      8 F. Supp. 2d 1275 (N.D. Okla. 1998) .......................................................... 8

*Frahm v. Equitable Life Assur. Soc. of U.*S.,
    137 F.3d 955 (7th Cir. 1998) .................................................... 11, 12, 15, 16

*GFF Corp. v. Assoc. Wholesale Grocers, Inc*.,
    130 F.3d 1381 (10th Cir. 1997) ................................................................ 2

*Huff v. Metro. Life Ins. Co*.,
    No. 21-CV-0284-CVE, 2021 WL 4952501 (N.D. Okla. Oct. 25, 2021)
    ................................................................ 2, 3, 7, 10, 11, 12, 15

*Johnson v. Spencer*,
    950 F.3d 680 (10th Cir. 2020) ................................................................ 2

*Joint Anti-Fascist Refugee Comm. v. McGrath*,
    341 U.S. 123 (1951)................................................................ 8

*Lang v. Aetna Life Ins. Co*.,
    196 F.3d 1102 (10th Cir. 1999) ................................................................ 17

*Monument Bldrs. of Greater Kans. City, Inc. v. Am. Cemetery Ass'n of
    Kans*., 891 F.2d 1473 (10th Cir. 1989) ................................................................ 8

*New York Life Ins. Co. v. Statham*,
    693 U.S. 24 (1876) ................................................................ 13

*Pikas v. Williams Companies, Inc*.,
    822 F. Supp. 2d 1163 (N.D. Okla. 2011) ................................................................ 18

*Robbins v. Okla.*,
    519 F.3d 1242 (10th Cir. 2008) ................................................................ 8

*Smallen v. The Western Union Co*.,
    950 F.3d 1297 (10th Cir. 2020) ................................................................ 2

*Smith v. U.S.*,
    561 F.3d 1090 (10th Cir. 2009) ................................................................ 4

*St. Louis Baptist Temple, Inc. v. F.D.I.C.*,
    605 F.2d 1169 (10th Cir. 1979) ................................................................ 2

**Statutes** ............................................................................................................**Page(s)**

29 U.S.C. § 1024(b)(4) ........................................................................................ 10

29 U.S.C. § 1102(a)(1) ........................................................................................ 13

29 U.S.C. § 1132(a)(1) .....................................................................................9, 12

29 U.S.C. § 1132(a)(3) ............................................................................ 12, 17, 18

29 U.S.C. § 1132(c) ..........................................................................................9, 10

29 U.S.C. § 1132(g) .............................................................................................. 19

12 Okla. Stat. § 95 ............................................................................................... 17


**Other Authorities**..............................................................................................**Page(s)**

Fed. R. Civ. P. 8................................................................................................. 8, 18

Fed. R. Civ. P. 12(b)(6) ...................................................................... 1, 4, 8, 18, 19

Pursuant to Rule 12(b)(6), Defendant BP Corporation North America, Inc. ("BP") moves to dismiss the Amended Complaint for failure to state a claim for relief. Plaintiff complains that the cost of life insurance benefits under the employee benefit plan in which he has participated since 1998 (the "Plan") increased as he aged, without the kind of justification that Plaintiff, now retired and about to turn 80, vaguely and belatedly seeks *via* litigation. Aside from being barred by Plaintiff's admission that he "acquiesced and continues to acquiesce today" to the premium increases over the past couple decades (Doc. 19, Am. Compl. ¶ 44), and by the statute of limitations, Plaintiff's lawsuit fails because he *does not (and cannot)* allege that the justification he now seeks is required by any provision of the Plan or the Employee Retirement Income Security Act of 1974 ("ERISA").

Nor does (or can) Plaintiff allege the cost increases otherwise contravene the Plan or ERISA, or even state law. Under the Plan, the cost of group universal life coverage, unsurprisingly, increases when the employee retires and ages toward life expectancy; as probability of an event rises, the cost to insure a benefit contingent on the occurrence of that event also rises. Further, under the Plan, the Plan Administrator reserves "sole discretion" to determine and change participant cost of coverage. Plaintiff ignores these terms and instead speculates about manufacturing a state law claim for unspecified wrongdoing. Unphased that his entire lawsuit is pure conjecture and unimpressed with the Court's multiple rulings that this dispute is governed by ERISA, Plaintiff alleges he is entitled to go on a fishing expedition to explore resurrection of his twice-dismissed and preempted breach of contract and tort claims. He is not.

BP submits the following brief in support of ending this litigation.

## BACKGROUND

**The Plan.** This dispute relates to life insurance benefits under the BP Group Universal Life Plan, which this Court twice has confirmed is an "employee benefit plan" within the meaning of and governed by ERISA. (Doc. 15, 5/26/22 Order at 9-10); *Huff v. Metro. Life Ins. Co.*, Case No. 21-CV-0284-CVE ("*Huff I*"), 2021 WL 4952501, at *3 (N.D. Okla. Oct. 25, 2021) (*Huff I*, Doc. 14).[1] BP attaches hereto, as Exhibits 1 and 2 respectively, the Plan Document and Summary Plan Description ("SPD").[2]

BP established and maintains the Plan as an ERISA-governed plan that provides group universal life ("GUL") coverage to current and former employees. (Ex. 1, Plan Doc. §§ 1.1, 1.2; Ex. 2, SPD pp. 2, 24, 26). GUL coverage, which employees may purchase at their discretion, is additional to and separate from the basic life insurance provided by BP. (Ex. 2, SPD p. 1 ). Employees elect GUL coverage in an amount that is a multiple of base

---

[1] "The court may take judicial notice of the filings in [*Huff I*] without converting BP's motion to dismiss into a motion for summary judgment." (Doc. 15, 5/26/22 Order at n.1); *see also Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (internal quotes and cites omitted) ("A district court . . . may take judicial notice of its own files and records, as well as facts which are a matter of public record, without converting a motion to dismiss into a motion for summary judgment."); *St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (abrogated on other grounds).

[2] The Plan Document broadly applies to the life and accident insurance benefits programs under the BP Corporation North America Inc. Consolidated Welfare Benefit Plan, of which the Plan is a component program. The Plan Document incorporates the SPD for the component program. (Ex. 1, Plan Doc.) Because the Plan is referenced by and central to the Amended Complaint, its terms are incorporated into the pleadings and may be considered by the Court on a motion to dismiss without converting the motion into one for summary judgment. (Doc. 15, 5/26/22 Order at n.3); *see also Smallen v. The Western Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020); *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

pay rounded up to the next $1,000. (Ex. 2, SPD p. 13) The Plan has a cash accumulation feature that allows participants to set aside interest-bearing amounts, including to pre-fund premiums that accrue after the participant ceases employment with BP. (Ex. 2, SPD p. 17) The Plan is funded through group life insurance policy no. 32900-G issued by MetLife to a trustee for the Plan. (Ex. 1, Plan Doc. App. B; Ex. 2, SPD p. 26).

As Plaintiff is aware, and as has been confirmed by this Court, BP is the Plan Sponsor and BP's Director of Health & Welfare is the Plan Administrator; MetLife is the claims administrator. (Ex. 2, SPD p. 26); (Doc. 15, 5/26/22 Order at 10); (*Huff I*, Doc. 14, 10/25/21 Order at 6). The Plan Administrator has the discretionary "authority to control and manage the operation and administration of the plan," including by "interpreting plan provisions" and "establishing rules and procedures for plan administration." (Ex. 2, SPD p. 27). Specifically, the Plan Administrator has the authority to determine participant cost under the Plan, including the "amount and frequency of contributions required from a Participant," which is "subject to change by and in the sole discretion of the Plan Administrator[.]" (Ex. 1, Plan Doc. at § 3.4). Further, as Plan Sponsor, BP reserves the power to amend and even terminate the Plan "at any time without advance notice," on the basis of any factor. (Ex. 2, SPD pp. 1, 31).

Also, as Plaintiff is aware and as has been highlighted multiple times in this dispute, the Plan expressly notifies the participant that "[y]ou cannot convert your GUL coverage to individual coverage." (Ex. 2, SPD p. 25). Rather, upon retirement, a qualified participant may "continue" coverage under the Plan. (Ex. 2, SPD p. 24). And the Plan makes clear that

3

only active employee participants may pay the cost of coverage through BP payroll deduction; a retiree participant "is billed directly by MetLife." (Ex. 2, SPD p. 6).

As to the cost of coverage, the Plan is express that a retiree who continues coverage is subject to different and higher GUL premium rates than applicable to active employees. (Ex. 2, SPD pp. 7, 24). Further, the Plan discloses that the "cost of coverage" is "based on . . . [y]our age" and increases as you get older. (Ex. 2, SPD pp. 6-7). Moreover, as Plaintiff is aware, after age 74, the amount of the rate change increases more steeply and frequently. (Doc. 19, Am. Compl. Exs. 7, 13).[3] As such, the GUL premium rate applicable to a retiree participant over age 74 is significantly higher than the rate applicable to the same participant at age 74 or to a participant who is an active employee.

Plaintiff became a participant in the Plan effective October 1, 1998. (Doc. 19, Am. Compl. ¶¶ 1, 12 & Ex. 3). Plaintiff voluntarily elected $264,000 in GUL coverage plus an accelerated benefits rider. (Doc. 19, Am. Compl. ¶ 2 & Ex. 3). Plaintiff retired effective December 31, 1998, and will turn 80 years of age this year, 2022. (Doc. 19, Am. Compl. ¶¶ 2, 31). Given Plaintiff is a retiree who is no longer on active payroll, MetLife directly bills Plaintiff for the cost of his coverage elections under the Plan. (Doc. 19, ¶¶ 8, 12, 69). Plaintiff receives quarterly billing statements that notify him of the cost due and invite him to contact MetLife with any questions. (Doc. 19-11, Am. Compl. Ex. 11).

**Cost Changes.** Plaintiff's monthly contribution to the premium cost when he commenced participation in the Plan in 1998 as an active employee age 55 was $105.07.

---

[3] Documents attached to a complaint are incorporated into the complaint for purposes of a Rule 12(b)(6) motion. *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009).

(Doc. 19-2, Am. Compl. Ex. 2). Plaintiff's premium costs have changed and generally increased with age over the 24 years Plaintiff's life has been covered under the Plan. By January 1, 2009, when Plaintiff was retired and had reached age 66, his cost had increased to $270.07 per month. (Doc. 19-13, Am. Compl. Ex. 13). The rates were decreased effective April 1, 2009, giving Plaintiff a monthly cost of $199.85. (Doc. 19-13, Am. Compl. Ex. 13). Subsequently, the rates were increased, giving Plaintiff a monthly cost of $451.97 in 2013 at age 70. (Doc. 19-7, Am. Compl. Ex. 7).

On October 24, 2013, Plaintiff received notice that the Plan was making a rate adjustment for retiree participants effective for the years 2014 and 2015. (Doc. 19, Am. Compl. ¶¶ 51, 85 & Ex. 7). The notice included rate tables comparing the 2013 rate with the rate increases for 2014 and 2015, as well as instructions for calculating monthly cost based upon the new rates, expressed as monthly amounts per $1,000 of elected coverage. The 2013 notice also invited Plaintiff to contact MetLife if he had "any questions or would like to make changes to [his] current GUL coverage[.]" (Doc. 19-7).

Plaintiff's increased monthly rate in 2014 at age 71 was $1.855 per month per $1,000 of coverage; at his elected coverage, the monthly cost was $489.72. Plaintiff's increased rate in 2015 at age 72 was $2.036 per month per $1,000 of coverage; at his elected coverage, the monthly cost was $537.50. (Doc. 19-7, Am. Compl. Ex. 7). In 2014, while Plaintiff was 71 years old, he was billed his cost under the Plan in accordance with the 2014 rate schedule, in the monthly amount of $489.72 ($1,469.16 quarterly). And, in 2015, while Plaintiff was 72 years old, he was billed his cost under the Plan in accordance with

the 2015 rate schedule, in the monthly amount of $537.50 ($1,612.50 quarterly). (Doc. 19, Am. Compl. Exs. 1, 7, 11).

The SPD published rates applicable to active employees after 2015 and notified participants that those rates did not apply to retiree participants or participants over age 70; these participants would need to contact MetLife to determine applicable rates. (Ex. 2, SPD p. 7) Plaintiff's cost of coverage under the Plan increased for 2017, when Plaintiff was 74 years old, to $572.35 per month ($1,717.05 quarterly). (Doc. 19, Am. Compl. Ex. 11). The cost increased again each year thereafter. In 2018, when Plaintiff was 75 years old, his monthly cost under the Plan was $944.86; in 2019, when Plaintiff was 76 years old, his monthly cost was $1,196.45; in 2020, when Plaintiff was 77 years old, his monthly cost was $1,652.90; in 2021, when Plaintiff was 78 years old, his monthly cost was $1,943.04. (Doc. 19, Am. Compl. Ex. 11).

Plaintiff "went along with his rates being raised and his premiums being increased" and "paid the bills for his premiums MetLife mailed him every quarter[.]" (Doc. 19, Am. Compl. ¶ 86). He "acquiesced and continues to acquiesce today" by paying each increased premium amount. (Doc. 19, Am. Compl.¶ 44, n. 16).

***Huff I.*** On July 24, 2021, Plaintiff brought this dispute in *Huff I*, on the basis MetLife allegedly failed to respond to his counsel's queries starting in 2020 about the past rate increases under the Plan. (Doc. 19, Am. Compl. ¶¶ 15, 16, 27). Plaintiff asserted Oklahoma state law claims for breach of contract and tortious breach of the implied covenant of good faith and fair dealing and threatened a fraud claim. MetLife removed the case to this Court and moved to dismiss it on the ground of ERISA preemption, explaining

the nature and operation of the Plan as an employee benefit plan sponsored by BP and governed by ERISA and attaching the SPD and Plan Document. (*Huff I*, Doc. 6, 13) The Court granted the motion, confirmed the ERISA nature of the Plan, and dismissed the case on October 25, 2021, but gave Plaintiff an opportunity to amend by November 5, 2021, to try to state an ERISA claim. (*Huff I*, Doc. 14 at 8).

**_Huff II._** Plaintiff thwarted the Court's order and invitation to amend and, on December 14, 2021, refiled his case in state court, reasserting against BP the same state law claims that had been dismissed. (Doc. 15, 5/26/22 Order at 3). BP removed the case to this Court and moved to dismiss it again for failure to state a claim. (*Id*. at 4). The Court granted BP's motion, on the ground of ERISA preemption, but again extended to Plaintiff an opportunity to amend to try to state an ERISA claim against BP. (*Id*. at 11-13).

Plaintiff filed his Amended Complaint in this action on June 16, 2022. (Doc. 19). Plaintiff continues to reject the Court's ruling that the Plan is an "employee benefit plan" governed by ERISA and, for the third time, pursues the same dismissed state law claims that are preempted by ERISA. Plaintiff admits his primary objective continues to be to "seek answers to questions" that he hopes will revive the dismissed state law claims. (Doc. 19, Am. Compl. pp. 1-3). However, instead of again refiling the dismissed state law claims in state court, Plaintiff gives lip service to the Court's latest order and labels his claims ERISA claims for relief under 29 U.S.C. § 1132.

## ARGUMENT AND AUTHORITY

### Standard

"The purpose of a modern complaint is to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief." *Monument Bldrs. of Greater Kans. City, Inc. v. Am. Cemetery Ass'n of Kans.*, 891 F.2d 1473, 1480 (10th Cir. 1989) (quotes and cites omitted).[4] The complaint must "show[] that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is necessary to ensure due process. "[W]hen a defendant is summoned before a federal court to answer to a claim for damages or to a demand for an injunction against him, there must be a 'plain statement of the claim showing that the pleader is entitled to relief.'" *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 177 (1951) (quoting Fed. R. Civ. P. 8(a)). "[D]ue process requires no less." *Id*. at n.3.

"The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id*. Specifically, "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id*. The plausibility

---

[4] *See also F.D.I.C. v. Grant*, 8 F. Supp. 2d 1275, 1287 (N.D. Okla. 1998) ("The touchstone of Rule 8's notice pleading regime is fair notice.") (citing *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1386 (10th Cir. 1980)).

standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint "has facial plausibility" only if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## I.   PLAINTIFF HAS NO ERISA OR PLAN RIGHT TO INFORMATION TO EXPLORE STATE LAW CLAIMS

Plaintiff "first and foremost" seeks to discover information to support his twice-dismissed state law contract and tort claims. Specifically, Plaintiff seeks the following: (a) information to effectively reverse the Court's ruling that the Plan is an employee benefit plan "subject to ERISA rather than a personal life insurance policy contract between Plaintiff and MetLife only" (Doc. 19, Am. Compl. p. 3); and (b) information about the rate increases under the Plan applicable to him, which information Plaintiff will "hand[] over for review and analysis by an expert life insurance actuary to determine whether the increases were justified, reasonable and fair" (*Id*. p. 2) so that "Plaintiff might then have evidence enough to add . . . allegations and to obtain remedies," including for "increas[ing] Plaintiff Huff's life insurance premium's fraudulently" (Doc. 19, Am. Compl. p. 3).

To accomplish this objective, Plaintiff invokes the ERISA remedies at 29 U.S.C. § 1132(a)(1) for enforcing rights under the terms of the Plan and for penalizing a plan administrator for failing to provide information required to be furnished under ERISA, 29 U.S.C. § 1132(c). (Doc. 19, Am. Compl. ¶ 108(a) & (b)). These ERISA remedies are not available to sponsor Plaintiff's off-roading litigation adventure.

The only information required to be furnished under ERISA, in accordance with 29 U.S.C. § 1132(c), is a copy, if requested of the plan administrator by the participant, of the "summary plan description" or "the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). The Plan terms mirror this right and further provide that the participant must send the request in writing to the specified BP address and may download an online copy of the SPD at no cost. (Ex. 2, SPD p. 32).

Plaintiff does not allege that he has requested from the Plan Administrator _any_ of the information required to be furnished under ERISA and the terms of the Plan. Indeed, Plaintiff has copies of the Plan Document, SPD, and MetLife Benefit Certificate for the group contract funding the benefits at issue and attaches and relies upon portions of them in this lawsuit. (Doc. 19, Am. Compl. Exs. 3, 4, 6, 8, 9).

Rather, Plaintiff alleges that his attorney contacted MetLife just prior to suing MetLife and then contacted BP during litigation with MetLife and prior to and after suing BP, vaguely demanding explanations for years of cost increases under the Plan and verification of MetLife's representations in litigation. (Doc. 19, Am. Compl. ¶¶ 15-28, 60-61). The written request to BP upon which Plaintiff relies in particular is a letter dated August 18, 2021, from Plaintiff's attorney, asking a BP benefits representative, Tonya, a series of questions following calls with her, in an attempt to explore an oppositional response to MetLife's motion to dismiss in _Huff I_ filed August 11, 2021. (Doc. 19, Am. Compl. ¶¶ 24, 30 & Ex. 5); (_Huff I_, Doc. 6). In his letter, Plaintiff's attorney did _not_ request a copy of any documents required to be furnished under ERISA or the Plan. (Doc. 19-5).

10

Instead, Plaintiff's attorney asked Tonya questions as to whether MetLife is "correct" in its representations about the Plan, why MetLife believes BP has authority to manage the Plan and make cost increases, and whether the Plan is governed by ERISA. (Doc. 19-5, Am. Compl. Ex. 5). Plaintiff then responded to MetLife's motion to dismiss, opposing dismissal on the ground questions were generated by his correspondence and conversations with Tonya. (*Huff I*, Doc. 12) (Doc. 19, Am. Compl. ¶¶ 23-24). MetLife filed a reply brief arguing that this correspondence and conversation did not negate the terms of the Plan or the application of ERISA. (*Huff I*, Doc. 13) Even if Tonya was not confused by Plaintiff's counsel's multiple calls and various questions about various benefits about which he himself was confused, and denied the Plan's status as an "employee benefit plan" governed by ERISA, the Plan is explicit that any such statements inconsistent with the terms of the Plan "are invalid and unenforceable and may not be relied upon by" Plaintiff. (Ex. 1, Plan Doc. ¶ 5.6)

The Plan is governed by its written terms; Plaintiff may not alter these terms or mold the Plan to his liking based upon his interpretation of communications with benefits personnel. It is an "essential principle established by ERISA" that "there are no oral variances from written plans." *Frahm v. Equitable Life Assur. Soc. of U.S.*, 137 F.3d 955, 960 (7th Cir. 1998). "ERISA requires firms to establish their plans in writing, to provide participants with written summary plan descriptions, and to furnish the full text of the plans on request. All of these provisions suppose that the written terms are the effective terms." *Id*. "Havoc would ensue if plans meant different things for different participants, depending on what someone said to them years earlier. Memory is weak compared to the written word,

11

and there is a substantial risk that participants will not correctly recall what was said, will exaggerate (in their favor) what they heard, or will simply prevaricate in order to improve their position." *Id.*

Plaintiff has the written terms of the Plan in his possession. Based upon these terms, the Court in *Huff I* found that the Plan indeed is an "employee benefit plan" governed by ERISA and that state law is preempted and does not apply. (*Huff I*, Doc. 14). The Court in this case ruled in accord. (Doc. 15, 5/26/22 Order at 9-12). Plaintiff's refusal to honor these decisions – in defiant pursuit of information to revive a breach of contract and tort action that was twice dismissed – does not state even a colorable claim for information under ERISA, 29 U.S.C. § 1132(a)(1).

## II.    PLAINTIFF HAS NO ERISA CLAIM FOR ALLEGED OVERCHARGE

Second, under ERISA, 29 U.S.C. § 1132(a)(3), Plaintiff purports to seek an injunction against and refund of alleged premium overcharge due to rate increases under the Plan. (Doc. 19, Am. Compl. ¶ 108(c) & (d)). ERISA Section 1132(a)(3) is available "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" Plaintiff fails to state a claim under Section 1132(a)(3) for the following reasons: (a) no provision of ERISA or the Plan prohibits or requires justification for the rate increases about which Plaintiff now complains, and/or (b) Plaintiff accepted the rate increases and is now estopped from complaining about them, and/or (c) Plaintiff's complaint is time-barred.

A.    **Plaintiff States No Violation**

Plaintiff does not identify, and Defendant is not aware of, any provision of ERISA or term of the Plan that was violated by the premium increases under the Plan. Indeed, ERISA provides that the Plan "shall be established and maintained" pursuant to its written terms, 29 U.S.C. § 1102(a)(1), and those terms expressly allow for the premium increases at issue and do not require the justification that Plaintiff now demands.

Under the Plan, a retiree who continues benefits is subject to different and higher group premium rates than applicable to active employees. (Ex. 2, SPD pp. 7, 24). Further, the Plan is express that the "cost of coverage" is "based on . . . [y]our age" and increases as the participant gets older. (Ex. 2, SPD pp. 6-7) Life insurance is designed to address the risk of premature death; primarily, it serves as income replacement for dependents who rely upon the insured's wages during anticipated working years. Obviously, this "risk in the early years of life is much less than in the later." *New York Life Ins. Co. v. Statham*, 693 U.S. 24, 34 (1876). The value of coverage increases with risk. "It is common knowledge, that the annual premiums are increased with the age of the person applying for insurance." *Id*. Moreover, the primary purpose of life insurance abates upon retirement. As such, it should come as no surprise that the cost of employee life insurance notably increases when the employee is retired and aging past 70 toward life expectancy.

Most significantly, the Plan explicitly imbues the Plan Administrator with "sole discretion" to determine and change the "amount and frequency of contributions required from a Participant[.]" (Ex. 1, Plan Doc. at § 3.4). And the Plan Administrator may do so without providing the justification that Plaintiff now demands. Indeed, neither the Plan nor

13

ERISA requires any notice at all of GUL rate changes, and BP may amend the Plan "at any time without advance notice" on the basis of any factor. (Ex. 2, SPD pp. 1, 31).

In any event, Plaintiff received notice of cost changes and an invitation to contact MetLife with questions, with each quarterly invoice. (Doc. 19-11, Am. Compl. Ex. 11). Further, Plaintiff received additional notice in 2013 of cost changes applicable to retiree participants for the years 2014 and 2015, along with an invitation to contact MetLife with questions. (Doc. 19-7, Am. Compl. Ex. 7) And the SPD notified Plaintiff that for years after 2015, since Plaintiff was a retiree participant and over age 70, he would need to contact MetLife for information about rates applicable to him. (Ex. 2, SPD p. 7) Plaintiff declined the invitations. He questioned _not a single one_ of the cost increases; rather, Plaintiff "acquiesced" and paid the increasing cost each and every year, including after 2015. (Doc. 19, Am. Compl. ¶¶ 44, 86).

Plaintiff points to no provision of ERISA or the Plan supporting his allegation that he was overcharged for premiums, including after 2015. Rather, like his claim for information, Plaintiff premises his claim for overcharge on his insistence, contrary to settled law of the case, that the benefits at issue are provided pursuant to an individual insurance contract with MetLife rather than an "employee benefit plan" governed by ERISA. (Doc. 19, Am. Compl. p. 1, ¶¶ 38-48) Operating under this misconception, Plaintiff alleges that he is a party to the insurance contract with MetLife and assumes that, as such, state contract and insurance industry standards required justification of and his consent to cost increases. (Doc. 19, Am. Compl. ¶¶ 49-51) To be sure, Plaintiff does not identify any

14

Oklahoma law requiring the same, and Defendant knows of none. Regardless, Plaintiff is not a party to the GUL policy funding the Plan and state law does not apply.

Again, as settled by this Court, the benefits at issue are provided pursuant to an "employee benefit plan" governed by ERISA, not an individual insurance policy governed by state law. (Doc. 15, 5/26/22 Order at 9-12); (*Huff I*, Doc. 14, 10/25/21 Order). The Plan Administrator has "sole discretion" to change the cost of coverage under the Plan and may do so without the justification Plaintiff now demands. (Ex. 1, Plan Doc. at § 3.4; Ex. 2, SPD pp. 1, 31). Plaintiff is a participant in the Plan, not a party to the GUL policy funding the Plan. The policyholder, as Plaintiff's own Benefit Certificate reflects, is a trustee for the Plan, not Plaintiff. (Doc. 19-3, Am. Compl. Ex. 3) And, as plainly stated by the Plan, the benefits under the Plan could not be, and therefore were not, converted into an individual insurance policy. (Ex. 2, SPD p. 25) Rather, upon retirement, Plaintiff elected "continued" benefits under the Plan. (Ex. 2, SPD p. 24). The reason MetLife directly bills Plaintiff, also explicit under the Plan, is that Plaintiff is a retiree who no longer can pay benefits through payroll deduction. (Ex. 2, SPD p. 6).

Otherwise, Plaintiff vaguely alleges BP breached ERISA fiduciary duties by increasing rates under the Plan without justifying the same. (Doc. 19, Am. Compl. ¶¶ 99, 103). Again, the Plan Administrator had the "sole discretion" to change the cost of coverage under the Plan and was not required to obtain Plaintiff's consent or demonstrate cause for the change. (Ex. 1, Plan Doc. at § 3.4; Ex. 2, SPD pp. 1, 31). The court in *Frahm, supra*, rejected similar allegations in an action by retiree participants in an ERISA health plan who complained about significant increases in the cost of coverage, including with

respect to premiums. Judge Easterbrook of the Seventh Circuit affirmed the district court's judgment for the employer sponsor and plan administrator finding "none of plaintiffs' theories justified stripping the employer of its reserved power to change the health plan at any time—a power it was free to use without having to show that the changes were beneficial to the active or retired agents[.]" 137 F.3d at 956. "Both the plan and the summary plan descriptions accurately told the plaintiffs that the [employer] had retained the right to change or even discontinue the medical-care plan." *Id.* at 961. "[A] power expressly reserved may be used—and used . . . without any need to consider the best interests of employees." *Id.*

Likewise, no ERISA theory of recovery supports Plaintiff's allegations of overcharge. The "sole discretion" to increase the cost of coverage under the Plan explicitly was reserved, and no provision of ERISA or the Plan was violated by the cost increases.

### B.  <u>Plaintiff's Claim Is Barred By Acquiescence</u>

Even assuming ERISA or the terms of the Plan required Plaintiff's consent to rate change or justification for the change, Plaintiff's claim is barred by his acquiescence. Plaintiff admits he "acquiesced and continues to acquiesce today" by paying each increased premium amount. (Doc. 19, Am. Compl.¶ 44, n. 16) He admits he "went along with his rates being raised and his premiums being increased" and "paid the bills for his premiums MetLife mailed him every quarter[.]" (Doc. 19, Am. Compl. ¶ 86) Plaintiff could have declined to continue coverage under the Plan. Instead, he chose to continue coverage and has made the required payments for 24 years. He may not now complain. *See, e.g., Chastain v. AT&T*, No. CIV-04-0281-F, 2007 WL 3357516 at *8 (W.D. Okla. Nov. 8,

2007) ("the court agrees, that plaintiffs' acceptance of increased pension payments" under the ERISA plan precluded their complaint).

### C.     Plaintiff's Claim Is Barred By the Statute of Limitations

In all events, the statute of limitations on any ERISA action that Plaintiff could have stated expired long ago. ERISA does not specify a limitations period for a claim under 29 U.S.C. § 1132(a)(3); as such, "the most closely analogous statute of limitations under state law" applies. *Lang v. Aetna Life Ins. Co.*, 196 F.3d 1102, 1104 (10th Cir. 1999) (internal cites and quotes omitted). The Oklahoma statute of limitations most closely analogous to an ERISA action for refund of premiums is the one applicable to "an action upon a statute for penalty or forfeiture," which provides a one year limitation period. 12 Okla. Stat. § 95.

Cost increases for the coverage elected by Plaintiff have been made since 1998, each time without the consent and "justification" Plaintiff only now demands. Plaintiff was aware of this fact soon after he retired in the end of 1998 and received and paid a billing statement for an amount greater than the amount he was previously billed. And by 2009, the fact rate changes were being made without explanation or participant input was even clearer, as reflected by the 2009 comparative rate schedules Plaintiff attaches to his Amended Complaint. (Doc. 19-13, Am. Compl. Ex. 13). Plaintiff received comparative rate schedules showing upcoming rate changes again in 2013. (Doc. 19, Am. Compl. Ex. 7). And every year thereafter, with each billing statement, Plaintiff received notice of the increase in the cost of his coverage under the Plan and an invitation to contact the claims administrator, MetLife, with questions. (Doc. 19, Am. Compl. Ex. 11). Plaintiff paid and continues to pay each increasing bill. (Doc. 19, Am. Compl. ¶¶ 44, 86).

On the face of the Amended Complaint, assuming *arguendo* that any ERISA cause of action has been pleaded in conformity with Rule 8, that claim accrued to Plaintiff no later than 2009, when Plaintiff had clear notice that Plan GUL rates were being changed without his consent and without the justification he now demands. Plaintiff's ERISA action accrued as a matter of law notwithstanding his unfamiliarity with ERISA law applicable to his claim. *See Pikas v. Williams Companies, Inc.*, 822 F. Supp. 2d 1163, 1167 (N.D. Okla. 2011) ("a cause of action accrues at the time when the facts, not the law, establishing an ERISA violation become known"). That was 13 years ago. Plaintiff's claim is barred under any applicable statute of limitations.

Plaintiff's overcharge claim under 29 U.S.C. § 1132(a)(3) fails for multiple independent reasons. Indeed, it is wholly without merit. Aside from being barred by acceptance and the statute of limitations, it is contrary to settled law of the case, established ERISA jurisprudence, and the terms of the Plan.

## III.   PLAINTIFF HAS NO CLAIM FOR COURT-SPONSORED RELIEF

Finally, Plaintiff requests that the Court formulate and state for him an ERISA claim for "appropriate" relief based upon facts to be discovered in the case. (Doc. 19, Am. Compl. ¶ 108(f)). This is impermissible. It is not the prerogative of the Court to advocate for a party. Such is the job of counsel, and it is not excused by unfamiliarity with ERISA. Nor may Plaintiff use legal process to fish for a claim. Plaintiff must state an actual case or controversy by alleging facts in sufficient detail to put BP on notice of the claim and to allow the Court to assess whether there is a plausible basis for relief. Fed. R. Civ. P. 8; Fed. R. Civ. P. 12(b)(6). Plaintiff does not satisfy these threshold standards.

## <u>CONCLUSION</u>

BP requests that the Court dismiss the case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. BP further seeks an award of attorney fees, including under 29 U.S.C. § 1132(g), for its time and expense in repeatedly responding to litigation in which Plaintiff makes rancorous allegations that he admits are speculative and not grounded in fact, eschews this Court's orders, and pursues claims and remedies contrary to settled law of the case.

Respectfully submitted,

/s Alison M. Howard
Alison M. Howard, OBA #19835
CROWE & DUNLEVY,
A PROFESSIONAL CORPORATION
The Braniff Building
324 North Robinson, Suite 100
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-7700
Facsimile:  (405) 239-6651
alison.howard@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT,
BP CORPORATION NORTH AMERICA,
INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of July, 2022, I electronically transmitted the attached document to the Court Clerk using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jeffrey A. Martin
jm8069337@aol.com

/s Alison M. Howard

20