## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROLAND K. HUFF,                            )
                                           )
              Plaintiff,                   )
                                           )
v.                                         )        Case No. 22-CV-00044-GKF-SH
                                           )
BP CORPORATION NORTH AMERICA, INC.         )
and/or METROPOLITAN LIFE                   )
INSURANCE COMPANY,                         )
                                           )
              Defendants.                  )

## OPINION AND ORDER

This matter comes before the court on the Motion to Reconsider [Doc. 30] of plaintiff

Roland K. Huff.  For the reasons set forth below, the motion is denied.

### Background/Procedural History

On July 14, 2021, plaintiff Roland Huff, a former BP employee, initiated a civil lawsuit in

the U.S. District Court for the Northern District of Oklahoma against Metropolitan Life Insurance

Company (MetLife), *Roland Huff v. Metropolitan Life Insurance Company*, 21-CV-00284-CVE-

CDL (N.D. Okla. July 14, 2021).[1]  The case was assigned to U.S. District Judge Claire V. Eagan.

---

[1] For ease of reference, the court refers to Northern District of Oklahoma Case No. 21-CV-00284-CVE-CDL, *Huff v. Metropolitan Life Insurance Company*, as "*Huff I*."  The court may take judicial notice of the filings in that case without converting BP's motion to dismiss to a motion for summary judgment.  *See St. Louis Baptist Temple, Inc. v. Fed. Dep. Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) (internal citation omitted) ("[A] court may, sua sponte, take judicial notice of its own records and preceding records if called to the court's attention by the parties. . . .  Further, it has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *see also Tal v. Hogan*, 453 F.3d 1244, 1264-65 n.24 (10th Cir. 2006) ("However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment.").

In that case, Mr. Huff asserted state law claims of breach of contract and bad faith related to group life insurance policy no. 32900-G administered by MetLife and designating BP as the "employer."

In an Opinion and Order dated October 25, 2021, Judge Eagan dismissed Mr. Huff's state-law claims of breach of contract and bad faith. *Roland Huff v. Metropolitan Life Insurance Company*, 21-CV-00284-CVE-CDL (N.D. Okla. Oct. 25, 2021), [Doc. 14]. Specifically, Judge Eagan concluded that group life insurance policy number 32900-G was an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101 *et seq.* [*Id.* at p. 6]. Because Mr. Huff's state-law claims "related to" employee benefit plan number 32900-G, the claims were preempted by ERISA. [*Id.* at p. 7]. Further, Judge Eagan noted that Mr. Huff failed to name BP, the plan administrator, as a defendant in his Complaint, which made his Complaint inadequate to state a plausible ERISA claim. [*Id.*]. However, Judge Eagan ordered that Mr. Huff could file an Amended Complaint naming the correct defendant and asserting an ERISA claim on or before November 5, 2021. [*Id.*].

Mr. Huff did not timely file an Amended Complaint in *Huff I*. Rather, on December 14, 2021, Mr. Huff filed a Complaint in the District Court in and for Tulsa County, this time against BP ("*Huff II*"). [Doc. 2, pp. 7-19]. The *Huff II* Complaint included two state-law claims: breach of implied service contract and breach of the implied duty of good faith and fair dealing. [*Id.* at pp. 16-17]. On January 24, 2022, BP removed the case to this court and, on January 31, 2022, filed a motion to dismiss [Doc. 9].

In an Order dated May 26, 2022, this court granted BP's motion to dismiss. [Doc. 15]. Specifically, the court concluded that the BP Corporation North America Inc. Life and Accident Plan, group life insurance policy number 32900-G, is a qualifying "employee benefit plan" subject to ERISA. [*Id.* at p. 10]. Thus, Mr. Huff's state-law breach of contract and bad faith claim were

pre-empted.  [*Id.* at pp. 10-11].  The court further concluded that Mr. Huff failed to state a plausible ERISA claim as the pleading included no allegations from which the court could reasonably infer that Mr. Huff was seeking to recover benefits or to clarify his right to future benefits.  [*Id.* at pp. 12-13].  Though the court granted BP's motion to dismiss, it granted Mr. Huff leave to file an Amended Complaint to allege a claim under ERISA on or before June 9, 2022.  [*Id.* at p. 13].  The court subsequently extended the deadline to June 16, 2022.  [Doc. 18].

On June 16, 2022, Mr. Huff filed his First Amended Complaint (Based on ERISA).  [Doc. 19].  On July 7, 2022, BP filed a Motion to Dismiss the Amended Complaint.  [Doc. 23].  Mr. Huff responded in opposition on August 8, 2022.  [Doc. 28; Doc. 29].

After having responded to the motion to dismiss, Mr. Huff filed the Motion to Reconsider [Doc. 30].  Therein, Mr. Huff asks the court to reconsider its conclusion in the May 26, 2022 Order that the BP Corporation North America Inc. Life and Accident Plan, group life insurance policy number 32900-G, is a qualifying "employee benefit plan" subject to ERISA.  [*Id.*].  BP has responded, and Mr. Huff has filed a reply.  Thus, the motion to reconsider is ripe for the court's determination.

## Legal Standard

The Tenth Circuit has recognized that "every order short of a final decree is subject to reopening at the discretion of the district judge."  *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983); Fed. R. Civ. P. 54(b)); *see also Been v. O.K. Indus., Inc.,* 495 F.3d 1217, 1225 (10th Cir. 2007) ("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders.").  Because Mr. Huff seeks reconsideration of an interlocutory order, this court adopts the three-factor approach endorsed by Judge Browning in *SFF-TIR, LLC v. Stephenson*, 264 F. Supp. 3d 1148, 1219 (N.D.

Okla. 2017) ("The best approach, in the Court's eyes, is to analyze motions to reconsider differently depending on three factors.").[2]  "First, the Court should restrict its review of a motion to reconsider a prior ruling in proportion to how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges."  *Id.*  As Judge Browning explained:

> How "thoroughly" a point was addressed depends both on the amount of time and energy the Court spent on it, and on the amount of time and energy the parties spent on it—in briefing and orally arguing the issue, but especially if they developed evidence on the issue.  A movant for reconsideration thus faces a steeper uphill challenge when the prior ruling was on a criminal suppression motion, class certification motion, or preliminary injunction, than when the prior ruling is, e.g., a short discovery ruling.  The Court should also look, not to the overall thoroughness of the prior ruling, but to the thoroughness with which the Court addressed the exact point or points that the motion to reconsider challenges.

*Id.* at 1219-20 (internal footnote omitted).  "Second, the Court should consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence that the parties may produce, and use those factors to assess the degree of reasonable reliance the opposing party has placed in the Court's prior ruling."  *Id.* at 1220.  Third, the court should consider the grounds for reconsideration under Fed. R. Civ. P. 59 as articulated by the Tenth Circuit in *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  Those grounds are:  "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."  *Servants of the Paraclete*, 204 F.3d at 1012.  The presence of a Rule 59 ground should weigh in favor of reconsideration.  *SFF-TIR, LLC,* 264 F. Supp. 3d at 1220.  However, "[u]nlike the motion that

---

[2] An order that grants a motion to dismiss, but expressly permits plaintiff leave to amend, constitutes an interlocutory order.  *See Phillips v. Humble,* 587 F.3d 1267, 1271 (10th Cir. 2009) (quoting *Moya v. Schollenbarger,* 465 F.3d 444, 451 (10th Cir. 2006)) ("[W]hen the dismissal order expressly grants the plaintiff leave to amend, that conclusively shows that the district court intended only to dismiss the complaint; the dismissal is thus not a final decision.").

produced the prior ruling, a motion to reconsider is not—and is not supposed to be—a fair fight procedurally.  The deck is stacked against a movant for reconsideration." *Id.* at 1221.  Further, a motion for reconsideration is not "an appropriate vehicle to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Id.* at 1214-15 (formatting altered from original) (quoting *Servants of Paraclete*, 204 F.3d at 1012).

## Analysis

As previously stated, Mr. Huff asks the court to reconsider its conclusion that the BP Corporation North America Inc. Life and Accident Plan, group life insurance policy number 32900-G, is a qualifying "employee benefit plan" subject to ERISA.   The court considers the request based on the three *SFF-TIR* factors set forth above.

### A.    Thoroughness of Briefing

As to the first factor, thoroughness of briefing, judges in this district have now twice rejected Mr. Huff's contention that group life insurance policy number 32900-G is not a qualifying "employee benefit plan" subject to ERISA.  The parties first briefed the issue in *Huff I.*  In the motion to dismiss briefing in that case, MetLife cited *Peckham v. Gem State Mut. of Utah,* 964 F.2d 1043, 1046-49 (10th Cir. 1992), for the elements of an ERISA "plan, fund, or program." *Roland Huff v. Metropolitan Life Insurance Company*, 21-CV-00284-CVE-CDL (N.D. Okla. Aug. 11, 2021), [Doc. 6, pp. 5-8].  Mr. Huff relies on *Peckham* in the motion to reconsider.  [Doc. 30, pp. 8, 11-12].  Likewise, MetLife discussed the distinction between continuation and conversion of a policy, now briefed by Mr. Huff in his motion to reconsider.  *Roland Huff v. Metropolitan Life Insurance Company*, 21-CV-00284-CVE-CDL (N.D. Okla. Sept. 24, 2021), [Doc. 13, pp. 4-5]; [Doc. 30, pp. 23-28].  Based on the documents submitted, Judge Eagan concluded that group life

insurance policy number 32900-G was an employee benefit plan within the meaning of ERISA. *Roland Huff v. Metropolitan Life Insurance Company*, 21-CV-00284-CVE-CDL (N.D. Okla. Oct. 25, 2021), [Doc. 14, pp. 6-7].

The parties again briefed whether group life insurance policy number 32900-G qualified as an ERISA "employee benefit plan" in this matter, *Huff II*. Like MetLife, in its motion to dismiss, BP cited *Peckham* for the elements of an "employee benefit plan." [Doc. 9, pp. 17-19]. Significantly, in response, Mr. Huff *did not* argue that the Plan did not qualify as an "employee benefit plan" but, instead, contended that his specific claims were not preempted as they were not sufficiently connected to ERISA. [Doc. 13, pp. 14-16]. Based on the applicable law, the undersigned concluded that the group life insurance policy was an "employee benefit plan" subject to ERISA. [*Id.*].

Here, both the parties and the court thoroughly addressed whether the group life insurance policy qualifies as an "employee benefit plan," and therefore the first factor weighs against reconsideration. Further, insofar as Mr. Huff has not previously raised the Safe Harbor Provision, 25 C.F.R. § 2510.3-1, as conceded by plaintiff's counsel, the issue could have been raised in prior briefing. *See* [Doc. 30, p. 6, 6 n.2]. Thus, Mr. Huff's motion "essentially asks the Court to grant [him] a mulligan on [his] earlier failure to present persuasive argument and evidence" on an issue that had been thoroughly briefed, not once, but twice. *See SFF-TIR, LLC,* 264 F. Supp. 3d at 1220. The first factor weighs against reconsideration.

> B.     *Case Progress and Posture*

Turning to the second factor, the case's progress and posture, no Scheduling Order has been entered in this matter and therefore no deadlines have been affected by Mr. Huff's motion. Nor is this case near its final disposition. *See SFF-TIR, LLC,* 264 F. Supp. 3d at 1220. Thus, the

case's overall progress weighs in favor of reconsideration.  However, in connection with this factor, the court must also consider "the motion for reconsideration's timeliness relative to the ruling it challenges."  *Id.*  Mr. Huff did not file the motion to reconsider until 81 days after the challenged Order.  Rather than immediately filing the motion to reconsider, during the 81-day period, Mr. Huff filed the First Amended Complaint (Based on ERISA) [Doc. 19] purporting to assert an ERISA claim.[3]  BP filed the motion to dismiss and Mr. Huff responded in opposition.  Only then did Mr. Huff seek reconsideration which, if granted, would permit Mr. Huff to pursue state-law claims, as opposed to an ERISA cause of action.  Under the circumstances, Mr. Huff's motion cannot be considered timely relative to the court's May 26, 2022 Order, particularly given BP's reliance on the First Amended Complaint (Based on ERISA) as the operative pleading.  This weighs against reconsideration.  Accordingly, on balance, the second factor is neutral.

C.     *Rule 59 Grounds for Relief*

Finally, as to the third factor, Mr. Huff contends that reconsideration is necessary "to correct clear error or prevent manifest injustice."  *Servants of the Paraclete*, 204 F.3d at 1012; *see* [Doc. 30, p. 5 ("Respectfully, Plaintiff would show the Court that the known facts and law do not support [the court's] conclusions.")].  Specifically, Mr. Huff contends that the court should have first considered the applicability of the Safe Harbor Provision then applied the "Conventional Test" to determine whether group life insurance policy number 32900-G was an "employee benefit plan."  [Doc. 30, p. 9].

As an initial matter, the court observes that a motion to reconsider "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior

---

[3] BP has filed a motion to dismiss the Amended Complaint for failure to state a claim for relief. [Doc 23].  The court will determine that motion under separate Order.  The court expresses no opinions herein as to whether Mr. Huff has alleged a plausible claim in the Amended Complaint.

briefing." *Servants of Paraclete*, 204 F.3d at 1012.  Based on the court's review, the arguments raised in Mr. Huff's motion could have been raised in prior briefing.  Thus, for this reason alone, the third factor weighs against reconsideration.  Nevertheless, the court considers the applicability of the Safe Harbor Provision and Conventional Test.

        1.    <u>Safe Harbor Provision</u>

Looking first to the Safe Harbor Provision, 29 C.F.R. § 2510.3-1(j), pursuant to that regulation,

> "employee welfare benefit plan" shall not include programs in which (1) no contribution is made by the employer; (2) participation in the program is completely voluntary for the employees; (3) the sole functions of the employer are to permit the insurer to publicize the program to employees and to collect premiums through payroll deductions; and (4) the employer receives no consideration in connection with the program.

*Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 463 (10th Cir. 1997).  A plan must satisfy each of the four factors in order to be excluded from ERISA coverage.  *Id.*

Mr. Huff does not clear the first hurdle.  Mr. Huff offers evidence that he paid the premiums for the life insurance policy, which was optional.  [Doc. 30-7].  However, the life insurance coverage was part of the broader, company-provided basic life and accidental death and dismemberment coverage, to which BP contributed.  [Doc. 23-2, pp. 3, 28].  Mr. Huff cannot sever the optional life insurance coverage, for which he paid the premium, from the broader employer plan.  *See Gaylor*, 112 F.3d at 463 (quoting *Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 567 (11th Cir. 1994)) ("[Plaintiff] attempts to sever [the] optional disability coverage from the rest of the benefits . . . received through [the] employer's plan.  'This cannot be done because the [optional] coverage was a feature of the Plan, notwithstanding the fact that the cost of such coverage had to be contributed by the employee.'"); *Weber v. GE Grp. Life Assurance Co.*, No. 05-CV-165-JHP-SAJ, 2005 WL 8165462, at *2 (N.D. Okla. Aug. 18, 2005) ("For purposes of

determination of ERISA application, Plaintiff may not sever the funded coverage from that which was not funded."). Thus, because the first factor is not satisfied, the Safe Harbor provision is inapplicable.

The Safe Harbor Provision is inapplicable for the additional reason that the third requirement is not met as BP chose the insurer, determined who was eligible and ineligible to participate in the coverage, required payment for coverage on an after-tax basis, directed when coverage began and when it terminated, and incorporated the group life insurance coverage into its broader Consolidated Welfare Benefit Plan. [Doc. 26-2, pp. 3-6, 8, 10, 12, 28]. *See Gooch v. Am. Fid. Assurance Co.*, No. CIV-09-721-R, 2010 WL 11613516, at *3 (W.D. Okla. Mar. 19, 2010). Because neither the first nor the third requirement are satisfied, the Safe Harbor Provision is inapplicable to exempt the optional life insurance coverage from ERISA.

> 2. <u>Conventional Test</u>

Turning next to the "conventional test," "employee welfare benefit plan" means

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). The definition includes five elements: "(1) a 'plan, fund, or program' (2) established or maintained (3) by an employer (4) for the purpose of providing health care or disability benefits (5) to participants or their beneficiaries." *Gaylor*, 112 F.3d at 464 (citing *Peckham*, 964 F.2d at 1047). The court separately considers each element.

First, "[a] 'plan, fund, or program' exists if 'from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits.'" *Gaylor,* 112 F.3d at 464 (quoting *Peckham,* 964 F.2d at 1047); *see also Sipma v. Massachusetts Cas. Ins. Co.*, 256 F.3d 1006, 1012 (10th Cir. 2001). Based on the court's review of the relevant documents, these elements are easily ascertainable. The benefit at issue is the optional life insurance coverage, the intended beneficiaries are BP's eligible employees and dependents of same, the source of financing is BP and participant contributions, and the procedures for receiving benefits are set forth in policy documents as provided in the summary plan description. *See* [Doc. 23-2]. Thus, this first element is satisfied.

Turning to the second element—"established or maintained"—this requirement "seeks to ascertain whether the plan is part of an employment relationship by looking at the degree of participation by the employer in the establishment or maintenance of the plan." *Peckham,* 964 F.2d at 1049. Whether the employer purchased the policy as an "expressed intention by the employer to provide benefits on a regular and long-term basis" is an important consideration. *Gaylor,* 112 F.3d at 464. Here, the policy is designated as a Group Policy with BP as the employer. [Doc. 19-2]. There is evidence that BP intended to provide benefits on a long-term or regular basis as "[t]he purpose of the Plan is to provide life and accident insurance Benefits to Plan Participants and/or their Beneficiaries and, in furtherance thereof, to set forth the provisions for the administration and operation of those Benefits." [Doc. 23-1, p. 3]. Specific to the life insurance coverage, the program is intended to provide life insurance at group rates. [Doc. 23-1, p. 14]. BP contributed to the Plan as a whole, of which the group life insurance policy is a part. [Doc. 23-1, p. 39]. *See Sipma*, 256 F.3d at 1012. Further, BP plays a substantial role in administering the

- 10 -

group life insurance policy because the Director, Health & Welfare of BP Corporation North America, Inc. is designated as the Plan Administrator.  [Doc. 23-1, p. 39].  As such, BP had the authority to establish eligibility requirements and amend or terminate the Plan.  [Doc. 23-1, pp. 5, 8, 40].  Given BP's expressed intent to provides its employees benefits, its role in administering and contributing to the overall plan, and "the reality of an ongoing comprehensive insurance program," the policy satisfies the "established or maintained" requirement.  *Gaylor*, 112 F.3d at 464-65; *see also Sipma*, 256 F.3d at 1013.

In the motion, Mr. Huff points out that BP delegated to MetLife certain powers and responsibilities including "processing and paying all claims for benefits."  [Doc. 23-1, p. 40]. However, "[t]he fact that an employer delegates part of the operational responsibility for the plan to the insurer does not mean that it did not 'establish or maintain' a plan."  *Gaylor,* 112 F.3d at 465 (citing 29 U.S.C. § 1105(c)(1)).  Further, as discussed above, BP maintains responsibility for certain aspects of the group life insurance policy, including selecting and contracting with a claims administrator and other service providers; determining expenses that can be paid from plan assets; determining whether an individual is eligible for or entitled to benefits; interpreting plan provisions; and establishing rules and procedures for plan administration.  [Doc. 23-1, p. 40]. Thus, the second element is satisfied.

The third element requires that the plan be established and maintained by an employer or employee organization.  *Gaylor*, 112 F.3d at 464.  The group life insurance policy number 32900-G, as part of the broader Plan, was established by BP for the benefit of its employees and other eligible dependents.  *See* [Doc. 23-1, pp. 4-5, 14-15].  Thus, the third requirement is satisfied.

Turning to the fourth element, that the plan be for the purpose of providing health care or disability benefits, the purpose of group life insurance policy number 32900-G, and the broader

plan, is to provide life insurance.  Thus, the fourth element is satisfied.  *Gaylor*, 112 F.3d at 464; *see also* 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . .").

With respect to the last element, benefits must be provided to participants or their beneficiaries.  Here, the benefits were provided to BP employees and their eligible beneficiaries. [Doc. 23-1 pp. 5 and 15].  Thus, the final requirement is satisfied.

Because the five elements of an ERISA employee benefit plan are satisfied, group life insurance policy number 32900-G constitutes an "employee welfare benefit plan" under ERISA.

3.    Conversion Plan

Finally, in the motion, Mr. Huff suggests that the life insurance policy is a conversion policy and therefore not subject to ERISA.  "Conversion coverage . . . generally refers to the right to convert group coverage provided under an ERISA plan to individual coverage."  *Eberlein v. Provident Life & Acc. Ins. Co.*, No. 06-CV-02454-REB-MJW, 2008 WL 791944, at *4 (D. Colo. Mar. 20, 2008).  At least one Circuit Court of Appeals has concluded a conversion policy is not governed by ERISA after the conversion.  *See Demars v. CIGNA Corp.,* 173 F.3d 443 (1st Cir. 1999).

As an initial matter, the court notes that a Circuit split exists as to whether ERISA applies to a conversion policy after the conversion.  Cf. *Demars,* 173 F.3d 443 *with Painter v. Golden Rule Ins. Co.,* 121 F.3d 436 (8th Cir. 1997).  It appears that the Tenth Circuit has not yet resolved the

issue.  Regardless, the court need not resolve the issue as the life insurance policy does not constitute a conversion policy.

The summary plan description for the group life insurance policy provides that "[y]ou cannot covert your GUL coverage to individual coverage." [Doc. 23-2, p. 27].  Thus, pursuant to the plain language of the policy documents, no conversion can occur.

Nevertheless, Mr. Huff points to his wife's averments regarding a telephone conversation she had with a BP Benefits Center employee regarding the subject policy.  However, Ms. Huff explicitly states that she was never actually told that the policy was converted to an individual policy.  [Doc. 30-8, p. 2].  Mr. Huff next contends that the summary plan description (Defendant's Exhibit 2 to the Motion to Dismiss) and policy demonstrate that he went through a process to render his coverage a separate personal policy.  [Doc. 35, p. 8].  However, as stated above, the summary plan description explicitly provides that the group life insurance coverage *cannot be* converted to individual coverage.  [Doc. 23-2, p. 27].  The summary plan document does not, and could not, demonstrate the Mr. Huff took any steps to convert his group life insurance coverage into individual coverage.  And, insofar as Mr. Huff argues that he received a separate, personal insurance policy by virtue of *continuing* his coverage, "continuation coverage" is governed by ERISA.[1]  *Eberlein.* 2008 WL 791944, at *4.

For the foregoing reasons, group life insurance policy no. 32900-G had not been converted to an individual policy outside of the scope of ERISA.  Thus, ERISA applies and Mr. Huff's state-law claims were properly preempted.

## Conclusion

WHEREFORE, the Motion to Reconsider [Doc. 30] of plaintiff Roland K. Huff is denied.

DATED this 1st day of February, 2023.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma